No. 22-56181

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

―――――――――――

## THE OHIO HOUSE, LLC,

*Plaintiff-Appellant,*

*v.*

## CITY OF COSTA MESA,

**A MUNICIPAL CORPORATION,**

*Defendant-Appellee,*

*and*

## BRANDON STUMP, AN INDIVIDUAL; ET AL.,

*Counter-defendants.*

―――――――――――

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
THE HONORABLE JAMES V. SELNA, JUDGE
CASE NO. 8:19-CV-01710-JVS-GJS

―――――――――――

## APPELLEE CITY OF COSTA MESA'S ANSWERING BRIEF

―――――――――――

MARY-CHRISTINE SUNGAILA
CHARLES M. KAGAY
JOCELYN SPERLING
GREG WOLFF
COMPLEX APPELLATE
LITIGATION GROUP LLP
620 NEWPORT CENTER DRIVE
SUITE 1100
NEWPORT BEACH, CA 92660
(949) 991-1900
MC.SUNGAILA@CALG.COM

KIMBERLY HALL BARLOW
JONES MAYER
3777 N HARBOR BOULEVARD
FULLERTON, CA 92835
(714) 446-1400
KHB@JONES-MAYER.COM

*Additional Counsel Listed on Following Page*

SEYMOUR B. EVERETT
CHRISTOPHER D. LEE
SAMANTHA E. DOREY
EVERETT DOREY LLP
18300 VON KARMAN AVENUE
SUITE 900
IRVINE, CA 92612
(949) 771-9233
SEVERETT@EVERETTDOREY.COM

*Attorneys for Defendant-Appellee*
**City of Costa Mesa**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................iv

INTRODUCTION ........................................................................................ 1

JURISDICTIONAL STATEMENT ........................................................... 3

QUESTIONS PRESENTED ........................................................................ 3

STATEMENT OF THE CASE .................................................................... 5

    A.    Summary of Pertinent Facts ................................................... 5

        1.    Ohio House begins operation in violation of the
             Zoning Code..................................................................... 5

        2.    The City confronts numerous problems created by a
             proliferation of sober living homes............................... 6

        3.    The City amends its Zoning Code to accommodate
             sober living homes and to allow the disabled more
             access to residential districts than the non-disabled.... 8

        4.    The City denies Ohio House's application to operate
             as a sober living home because it does not comply
             with the Zoning Code and fails to justify a
             reasonable accommodation............................................ 14

    B.    Ohio House sues the City and loses on all counts following
        a jury trial............................................................................ 15

STANDARD OF REVIEW......................................................................... 16

SUMMARY OF ARGUMENT ................................................................... 18

ARGUMENT ............................................................................................... 20

    I.    The District Court Correctly Denied Ohio House's
        Summary Judgment and Renewed JMOL Motions with
        Regard to Facial Discrimination. .......................................... 20

        A.    The Zoning Code is not facially discriminatory
            because it treats the disabled more favorably than
            the non-disabled.......................................................... 21

i

B.    The district court did not err in denying Ohio House's motion for summary judgment, because there were triable issues of fact on the City's justifications. ..................................................... 31

C.    The district court did not err in denying Ohio House's renewed JMOL motion, because substantial evidence supported the City's justifications. .............. 35

D.    The State's claim that the City failed to make necessary showings provides no grounds for reversal. 40

E.    Ohio House's facial discrimination claim does not support a discriminatory statement claim. ................ 42

II.    The District Court Correctly Denied Ohio House's Summary Judgment and Renewed JMOL Motions with Regard to Reasonable Accommodation. ................................ 43

A.    The district court correctly denied the summary judgment motion because, among other reasons, there were triable questions of fact. ............................. 44

B.    The district court correctly denied the renewed JMOL motion because, among other reasons, the jury found against it on the basis of substantial evidence. ...................................................................... 48

C.    The State's "reasonable accommodation" argument provides no grounds for reversal. ................................ 54

III.    The District Court Correctly Denied Ohio House's Renewed Motion for JMOL with Regard to Pattern and Practice. .................................................................................... 59

IV.    The District Court Correctly Denied Ohio House's Motion for Judgment Under California Government Code Section 65008. ........................................................................ 61

V.    The District Court Correctly Granted Summary Judgment for the City on Ohio House's Disparate Impact Claim. ........ 63

VI.    The District Court Correctly Denied Ohio House's Motion for a New Trial. ..................................................................... 66

A. The district court did not commit prejudicial errors on facial discrimination and justification. ................... 66

B. The jury instructions on the interference claim were legally correct. ............................................................. 70

C. The district court did not abuse its discretion when it excluded statements by governmental entities about group home regulations. ............................................... 72

D. Ohio House has waived any challenge to the instructions on its reasonable accommodation claim.. 73

E. The district court did not abuse its discretion by admitting Brandon Stump's testimony containing epithets. ......................................................................... 73

VII. New Issues Introduced by the State Do Not Justify Reversal. ................................................................................ 75

A. California's right of privacy does not justify reversal. 76

B. California's Housing Element Law does not justify reversal. ......................................................................... 77

C. Any differences between California and federal law do not justify reversal. ................................................. 77

D. "Public policy" does not justify reversal. ...................... 78

VIII. The Court Should Affirm but, if It Reverses, There Is No Ground for Reassignment to a New Judge. ......................... 80

CONCLUSION ........................................................................ 81

CERTIFICATE OF COMPLIANCE ....................................... 83

# TABLE OF AUTHORITIES

## CASES

*431 E. Palisade Ave. Real Est., LLC v. City of Englewood*,
  977 F.3d 277 (3d Cir. 2020) .............................................................. 22

*A.D. v. Cal. Highway Patrol*,
  712 F.3d 446 (9th Cir. 2013) .......................................................... 39

*Anderson v. City of Blue Ash*,
  798 F.3d 338 (6th Cir. 2015) .......................................................... 52

*Arcadia Dev. Co. v. City of Morgan Hill*,
  129 Cal. Rptr. 3d 369 (Ct. App. 2011) ........................................... 63

*Baccei v. United States*,
  632 F.3d 1140 (9th Cir. 2011) .......................................................... 3

*Badgley v. United States*,
  957 F.3d 969 (9th Cir. 2020) .................................................... 72, 73

*Beverly Oil Co. v. City of Los Angeles*,
  254 P.2d 865 (Cal. 1953) ................................................................ 80

*Bostock v. Clayton Cnty., Ga.*,
  140 S. Ct. 1731 (2020) .................................................................... 23

*C.B. v. City of Sonora*,
  769 F.3d 1005 (9th Cir. 2014) .................................................. 67, 68

*Calvary Chapel Bible Fellowship v. Cnty. of Riverside*,
  948 F.3d 1172 (9th Cir. 2020) ........................................................ 21

*Casa Capri LLC v. City of Costa Mesa*,
  No. 20-55334 (9th Cir. Apr. 18, 2022) ............................................. 9

*Caudle v. Bristow Optical Co.*,
  224 F.3d 1014 (9th Cir. 2000) ........................................................ 69

*City of Santa Barbara v. Adamson*,
  610 P.2d 436 (Cal. 1980) ................................................................ 76

*Clemons v. City of Los Angeles,*
222 P.2d 439 (Cal. 1950) ............................................................... 79

*Cmty. House, Inc. v. City of Boise,*
490 F.3d 1041 (9th Cir. 2007) ...................................... 22, 24, 31, 32

*Cnty. of Sonoma v. Superior Court,*
118 Cal. Rptr. 3d 915 (Ct. App. 2010) ..................................... 62, 63

*Crowley v. Epicept Corp.,*
883 F.3d 739 (9th Cir. 2018) ........................................................ 17

*De La Cruz v. Tormey,*
582 F.2d 45 (9th Cir. 1978) .......................................................... 22

*Dillard & Sons Constr., Inc. v. Burnup & Sims Comtec, Inc.,*
51 F.3d 910 (10th Cir. 1995) ........................................................ 68

*Disability Rights Montana, Inc. v. Batista,*
930 F.3d 1090 (9th Cir. 2019) ................................................ 80, 81

*Duarte v. City of Stockton,*
60 F.4th 566 (9th Cir. 2023) ......................................................... 16

*Dupree v. Younger,*
598 U.S. 729 (2023) ...................................................................... 44

*Frank v. United Airlines, Inc.,*
216 F.3d 845 (9th Cir. 2000) ........................................................ 23

*Gibbs v. Consol. Servs.,*
4 Cal. Rtpr. 3d 187 (Ct. App. 2003) ............................................. 24

*Gilbrook v. City of Westminster,*
177 F.3d 839 (9th Cir. 1999) ........................................................ 17

*Gomez v. Quicken Loans, Inc.,*
629 F. App'x 799 (9th Cir. 2015) .................................................. 22

*Groch v. City of Berkeley,*
173 Cal. Rptr. 534 (Ct. App. 1981) ............................................... 79

*Harper v. City of Los Angeles,*
533 F.3d 1010 (9th Cir. 2008) ...................................................... 18

*Hernandez v. City of El Monte*,
 138 F.3d 393 (9th Cir. 1998) ........................................................ 81

*Krechman v. Cnty. of Riverside*,
 723 F.3d 1104 (9th Cir. 2013) ...................................................... 80

*Lakeside-Scott v. Multnomah Cnty.*,
 556 F.3d 797 (9th Cir. 2009) ......................................................... 9

*Landes Constr. Co. v. Royal Bank of Canada*,
 833 F.2d 1365 (9th Cir.1987) ...................................................... 17

*Larkin v. State of Michigan Dep't of Social Servs.*,
 89 F.3d 285 (6th Cir. 1996) ................................................... 52, 53

*Lawson v. Grubhub, Inc.*,
 13 F.4th 908 (9th Cir. 2021) ........................................................ 17

*Mangold v. Cal. Pub. Utils. Comm'n*,
 67 F.3d 1470 (9th Cir. 1995) ....................................................... 71

*Manley v. Rowley*,
 847 F.3d 705 (9th Cir. 2017) ....................................................... 80

*Oconomowoc Residential Programs v. City of Milwaukee*,
 300 F.3d 775 (7th Cir. 2002) ....................................................... 58

*Ortiz v. Jordan*,
 562 U.S. 180 (2011) ..................................................................... 44

*Oxford House-C v. City of St. Louis*,
 77 F.3d 249 (8th Cir. 1996) ......................................................... 30

*Pac. Shores Props., LLC v. City of Newport Beach*,
 730 F.3d 1142 (9th Cir. 2013) ................................................ 77, 78

*Pac. Shores, LLC v. City of Costa Mesa*,
 No. 20-55456 (9th Cir. Dec. 2, 2021) ......................................... 8, 9

*Ridgeway v. Walmart Inc*,
 946 F.3d 1066 (9th Cir. 2020) ................................................ 68, 69

*Rose v. Wells Fargo & Co.*,
 902 F.2d 1417 (9th Cir. 1990) ..................................................... 24

*Rusak v. Holder*,
    734 F.3d 894 (9th Cir. 2013) ........................................................ 21

*Russian River Watershed Prot. Comm. v. City of Santa Rosa*,
    142 F.3d 1136 (9th Cir. 1998) .................................................... 3, 75

*Sailboat Bend Sober Living, LLC v. City of Fort Lauderdale*,
    46 F.4th 1268 (11th Cir. 2022).................................... 27, 28, 29, 30

*Saman v. Robbins*,
    173 F.3d 1150 (9th Cir. 1999) ........................................................ 18

*Schwarz v. City of Treasure Island*,
    544 F.3d 1201 (11th Cir. 2008) .......................................... 46, 51, 52

*Skidmore ex rel. Randy Craig Wolfe Tr. v. Led Zeppelin*,
    952 F.3d 1051 (9th Cir. 2020) .................................................. 18, 68

*SoCal Recovery, LLC v. City of Costa Mesa*,
    56 F.4th 802 (9th Cir. 2023).......................................................... 9

*Solid Landings Behavioral Health, et al. v. City of Costa Mesa*,
    No.15-55779 (9th Cir. May 16, 2016) .............................................. 9

*Summit Coastal Living v. City of Costa Mesa*,
    No. 20-55628 (9th Cir. Jan. 4, 2022)............................................... 9

*Sw. Fair Hous. Council, Inc. v. Maricopa Domestic Water
    Improvement Dist.*,
    17 F.4th 950 (9th Cir. 2021).......................................................... 64

*Swinton v. Potomac Corp.*,
    270 F.3d 794 (9th Cir. 2001) .................................................. 70, 72

*Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*,
    576 U.S. 519 (2015) .............................................................. 63, 64

*Turning Point, Inc. v. City of Caldwell*,
    74 F.3d 941 (9th Cir. 1996) .......................................................... 34

*United States v. Cal. Mobile Home Park Mgmt. Co.*,
    29 F.3d 1413 (9th Cir. 1994) ........................................................ 53

*United States v. Pena,*
  24 F.4th 46 (1st Cir. 2022) ....................................................... 74, 75

*United States v. Powell,*
  955 F.2d 1206 (9th Cir. 1991) ....................................................... 72

*United States v. Wahchumwah,*
  710 F.3d 862 (9th Cir. 2013) ......................................................... 75

*Ventura Packers, Inc. v. F/V Jeanine Kathleen,*
  305 F.3d 913 (9th Cir. 2002) ......................................................... 17

*Vinson v. Thomas,*
  288 F.3d 1145 (9th Cir. 2002) ....................................................... 45

*Walker v. Beard,*
  789 F.3d 1125 (9th Cir. 2015) ....................................................... 39

*Williams v. Gaye,*
  895 F.3d 1106 (9th Cir. 2018) ....................................................... 44

*Yellowstone Womens First Step House, Inc. v. City of Costa Mesa,*
  No. 19-56410, 2021 WL 4077001 (9th Cir. Sept. 8, 2021) .............. 8

## STATUTES

42 U.S.C. § 3604 ................................................................. 23, 42

Cal. Gov't Code § 8899.50 ........................................................ 37

Cal. Gov't Code § 12927 ........................................................... 56

Cal. Gov't Code § 65008 ..................................................... *passim*

Cal. Gov't Code § 65009 ........................................................... 62

Cal. Gov't Code § 65583 ...................................................... 37, 41

Cal. Health & Safety Code § 1502 ............................................. 40

Cal. Health & Safety Code § 1503.5 .......................................... 40

## RULES

Fed. R. Civ. P. 50 ................................................................... 48

Fed. R. Civ. P. 51 ................................................................... 68

Fed. R. Civ. P. 52 ................................................................... 17

Fed. R. Civ. P. 56 ................................................................... 46

Fed. R. Evid. 401 .................................................................... 37

Fed. R. Evid. 403 .................................................................... 74

## REGULATIONS

Cal. Code Regs. tit. 2, § 12040 ............................................. 23

Cal. Code Regs. tit. 2, § 12177 ............................................. 54

Cal. Code Regs. tit. 2, § 12179 ............................................. 55

Cal. Code Regs. tit. 2, § 12180 ............................................. 56

# INTRODUCTION

Faced with a rapid proliferation of sober living homes—businesses offering recovering alcoholics and drug addicts a residence to transition to everyday living following addiction treatment—the City of Costa Mesa ("the City") enacted a series of ordinances to accommodate such businesses while guarding the interests of both their residents and the general public. The ordinances granted sober living homes special benefits and privileges not available to comparable businesses serving the non-disabled, while imposing some additional requirements. Appellant The Ohio House LLC ("Ohio House") would like to take advantage of those special benefits and privileges while bypassing the requirements, so it sued the City, claiming discrimination on the basis of disability.

The district court denied Ohio House's motion for summary judgment. The jury rejected all of its claims after an eight-day trial. And the district court rejected its claim under California Government Code section 65008, and went on to deny Ohio House's motions for judgment as a matter of law ("JMOL") and new trial. None of this is surprising; the City's ordinances on their face, far from discriminating against the

disabled, offer them the same housing opportunities available to similarly situated non-disabled persons and additional housing opportunities. The evidence presented on summary judgment and at trial showed that the City's actions were not discriminatory, that it harbors no bias against the disabled, and that its ordinances were intended to and do in fact benefit the disabled.

Ohio House now seeks to have this Court overturn the thoughtful conclusions reached by the district court and the jury. But it cannot identify any error on the part of either, for the reasons explained below.

Additionally, two agencies of the State of California[1] ("the State") have moved for leave to file an amicus brief, joining Ohio House in asking this Court to reverse the judgment. The Court should not entertain the State's requested filing, for the reasons explained in the City's opposition to the State's motion. But if the Court were to accept the brief, the State's arguments should be rejected. The State principally argues issues of state law that were not raised in the district court and therefore are not properly before this Court. *Baccei v. United States*, 632 F.3d 1140, 1149

---

[1] The California Civil Rights Department and the California Department of Housing and Community Development.

(9th Cir. 2011); *Russian River Watershed Prot. Comm. v. City of Santa Rosa*, 142 F.3d 1136, 1141 n.1 (9th Cir. 1998). It also improperly attempts to act as a super-jury, making findings on the basis of evidence it assumes, without citation, must exist in the trial record.

The Court should affirm the judgment.

## JURISDICTIONAL STATEMENT

Appellee agrees with the Jurisdictional Statement in Appellant's Opening Brief.

## QUESTIONS PRESENTED

1. Do municipal ordinances that offer the disabled all the housing options available to the non-disabled, and other housing options not available to the non-disabled, discriminate on their face against the disabled?

2. Should this Court overturn a summary judgment, jury verdict, and a ruling on a JMOL motion, all determining that the City's ordinances do not discriminate on the basis of disability, simply because they treat the disabled differently, where the evidence showed that the differences benefited rather than harmed the disabled?

3.      Should this Court affirm the judgment following a jury verdict on the issues of reasonable accommodation, pattern and practice, and liability under California Government Code section 65008, where substantial evidence supported the findings in favor of the City?

4.      Should this Court overturn a summary judgment granted in favor of the City on the claim of disparate impact, where no material factual issues were in dispute?

5.      Did the district court abuse its discretion by denying Ohio House's motion for new trial where the jury instructions were accurate and evidentiary rulings were sound?

6.      Should this Court reverse a judgment on the basis of claims raised by proposed amicus that were never presented to the district court?

7.      If the Court reverses, should it assign the case to a new judge simply on the ground that the judge allegedly erred?

## STATEMENT OF THE CASE

### A.    Summary of Pertinent Facts

#### 1.    Ohio House begins operation in violation of the Zoning Code.

Ohio House began operating the "Wilson Property," which it describes as a sober living home, within the City in late 2012 or early 2013. 17-ER-3814; 19-ER-4176. The Zoning Code defines a "sober living home" as "a group home for persons who are recovering from a drug and/or alcohol addiction and who are considered handicapped under state or federal law." StatAdd-107. The Wilson Property consists of five houses in a row, housing up to forty-five adult men. 17-ER-3910.

Ohio House is a for-profit business. 20-ER-4510-11. It chooses to whom it rents, and it rents out rooms to clients under separate rental agreements for each client. 18-ER-4134; 22-ER-4964-65. Consequently, when it began operation, the Wilson Property fell within the Zoning Code's definition of a "boardinghouse," which was a dwelling "where guestrooms are provided in exchange for an agreed payment of a fixed amount of money or other compensation based on the period of occupancy." 28-ER-6339; 22-ER-4939. As such, it was required to obtain a permit from the City to operate, which it did not do. 22-ER-4940.

5

The City could then have required Ohio House to obtain a permit or else shut down. 22-ER-4941-42. However, at the time, the City was unaware of Ohio House's existence. 22-ER-4940. More broadly, the City did not attempt to shut down the numerous sober living homes that were operating without a permit at that time because it recognized that they could provide a beneficial service; it chose instead to craft an ordinance to accommodate them. 22-ER-4943-44.

### 2. The City confronts numerous problems created by a proliferation of sober living homes.

From 2012 to 2017, sober living homes proliferated in the City. 22-ER-4941. In ordinances passed from 2014 to 2017, the City noted that California's Substance Abuse and Crime Prevention Act of 2000 and the federal Affordable Care Act had fostered this proliferation and resulted in an overconcentration of such homes in residential neighborhoods, "which is both deleterious to the residential character of [these] neighborhoods and may also lead to the institutionalization of such neighborhoods." StatAdd-30-31, 55-56, 66-67, 77-78, 91. Some neighborhoods became overwhelmed, with up to five or six sober living

6

homes in a single block, some housing as many as 30 residents. 21-ER-4696-97.

The City concluded that the existing situation was harmful to the disabled persons supposedly being served:

> [H]ousing inordinately large numbers of unrelated adults in a single family home or congregating sober living homes in close proximity to each other does not provide the handicapped with an opportunity to "live in normal residential surroundings," but rather places them into living environments bearing more in common with the types of institutional/campus/dormitory living that the [California Fair Employment and Housing Act] and [Fair Housing Act] were designed to provide relief from for the handicapped, and which no reasonable person could contend provides a life in a normal residential surrounding."

StatAdd-58, 78, 92. It also noted: "[S]ome operators of sober living homes are driven more by a motivation to profit rather than to provide a comfortable living environment in which recovering addicts have a realistic potential of recovery, or to provide a living environment which remotely resembles the manner in which the non-disabled use and enjoy a dwelling." StatAdd-56, 67, 79, 93.

At the same time, the City observed that "while not in character with residential neighborhoods, ... when operated responsibly, group homes, including sober living homes, provide a societal benefit by providing the handicapped the opportunity to live in residential

neighborhoods, as well as providing recovery programs for individuals attempting to overcome their drug and alcohol addictions." StatAdd-58, 68, 78-79, 92-93. It consequently recognized that "providing greater access to residential zones to group homes, including sober living homes, than to boardinghouses or any other type of group living provides a benefit to the City and its residents." *Id.* It amended its Zoning Code to do just that.

> **3. The City amends its Zoning Code to accommodate sober living homes and to allow the disabled more access to residential districts than the non-disabled.**

The City enacted a series of ordinances to update its Zoning Code to address sober living homes. StatAdd-29-98. A series of lawsuits has since challenged the ordinances; none have invalidated them. In *Yellowstone Womens First Step House, Inc. v. City of Costa Mesa,* No. 19-56410, 2021 WL 4077001 (9th Cir. Sept. 8, 2021), a jury found the City had not engaged in any pattern or practice of discrimination and reached a defense verdict on all claims, and this Court affirmed the judgment. In three other cases, the district court granted summary judgment in the City's favor and the plaintiffs voluntarily dismissed their appeals. *Pac.*

8

*Shores, LLC v. City of Costa Mesa*, No. 20-55456 (9th Cir. Dec. 2, 2021); *Summit Coastal Living v. City of Costa Mesa*, No. 20-55628 (9th Cir. Jan. 4, 2022); *Casa Capri LLC v. City of Costa Mesa*, No. 20-55334 (9th Cir. Apr. 18, 2022). In another case, the district court denied a preliminary injunction, and the parties settled while the appeal was pending. *Solid Landings Behavioral Health, et al. v. City of Costa Mesa*, No.15-55779 (9th Cir. May 16, 2016). This Court reversed summary judgments granted in the City's favor in *SoCal Recovery, LLC v. City of Costa Mesa*, 56 F.4th 802 (9th Cir. 2023), on grounds unrelated to the validity of the ordinances; the City has petitioned the United States Supreme Court for a writ of certiorari.

Here, too, the evidence established that the City and its employees did not regulate sober living homes out of bias against the disabled or with discriminatory intent.[2] 20-ER-4370, 4372-73, 4384; 22-ER-4917-18. The City does not inhibit someone suffering from alcohol or drug

---

[2] The evidence at trial must be viewed in the light most favorable to the City—the party in whose favor the jury returned a verdict. *Lakeside-Scott v. Multnomah Cnty.*, 556 F.3d 797, 800 n.2 (9th Cir. 2009).

addiction from living in any location in the City available to anyone else. 18-ER-4111-12; 21-ER-4690-91; 22-ER-4964.

The Zoning Code defines three levels of homes in which rooms can be rented under more than one rental agreement, as Ohio House does. In this brief, such homes will be described as "multiple-rental homes."

The most general class of multiple-rental home is a "boardinghouse," in which rooms can be rented to anyone, disabled or not. StatAdd-101. Boardinghouses may rent at most six rooms. *Id.* They are "small" if they rent two or fewer rooms, or "large" if they rent three to six rooms. *Id.* In 2021, the Zoning Code also expressly limited them to six or fewer residents, which had always been the City's intent. 21-ER-4688; 19-ER-4217-18.

The next and narrower level of multiple-rental home is a "group home," which is a "facility that is being used as a supportive living environment for persons who are considered handicapped under state or federal law." StatAdd-103. Unlike for boardinghouses, the Zoning Code places no limit on the number of rooms that can be rented in a group home or the number of residents.

The narrowest level of multiple-rental home is a "sober living home," which is "a group home for persons who are recovering from a drug and/or alcohol addiction and who are considered handicapped under state or federal law." StatAdd-107. The Zoning Code places no limit on the number of rooms that can be rented in such homes or the number of residents. Ohio House operates a group home that is a sober living home accommodating up to forty-five residents. AOB-9; 17-ER-3910.

The Zoning Code limits where multiple-rental homes can be located. Small boardinghouses are permitted in all Multi-Family Residential Districts.[3] StatAdd-129. They must be separated by at least 650 feet. StatAdd-132. Large boardinghouses may be located in all the same districts, except Planned Development Residential–Low Density. StatAdd-129. They must be separated by at least 1,000 feet. StatAdd-132.

Group and sober living homes renting to six or fewer persons may be located within all the areas in which large boardinghouses may be located, and also in Single-Family Residential Districts. StatAdd-129. Such homes renting to seven or more persons may be located within all

_____

[3] The Zoning Code defines the zoning districts at StatAdd-114-115.

the areas in which large boardinghouses may be located. StatAdd-129. All sober living homes must be separated by at least 650 feet from another group or sober living home, or a state-licensed drug and alcohol treatment facility. StatAdd-129, 132, 147-48.

The separation requirement was designed to benefit both the residents of such homes and City residents in general. 22-ER-4975. Specifically, it was enacted to "allow[] people living in group homes to experience a residential environment as opposed to a more institutional environment." 20-ER-4381. At trial, this separation requirement was the sole basis for Ohio House's discrimination claim. SER-35.

Thus, the Zoning Code provides more options to multiple-rental homes renting to the disabled (group and sober living homes) than to the only multiple-rental home option available to the non-disabled (boardinghouses). Unlike boardinghouses, group and sober living homes may locate in Single-Family Residential Districts. StatAdd-129. And, outside Single-Family Residential Districts, group and sober living homes have no limits on the number of residents they may have; boardinghouses, in contrast, are limited to renting six rooms and, since

2021, are also limited to only six persons. Stat.Add-101; 19-ER-4217-18; 21-ER-4688; 22-ER-4958.

Because the Zoning Code provides more options to group and sober living homes than boardinghouses, a crucial premise of Ohio House's argument on appeal is that the comparison is meaningless because there are no boardinghouses in the City. AOB-14-15, 38, 48. In fact, the evidence at trial showed that there are boardinghouses in the City. 23-ER-5129-30.

Ohio House tries to paint the ordinances as the City's attempt to drive the disabled out of the City, by focusing attention on previously non-compliant, unlicensed sober living homes that applied for permits after the ordinances were passed. AOB-12-13. In fact, the evidence showed that from 2014 to 2017 the number of available beds in licensed and unlicensed recovery facilities within the City increased from about 1,160 to nearly 1,800, and the number of facilities increased, as well. 22-ER-4929-30, 4934-35; SER-67-77.

**4.    The City denies Ohio House's application to operate as a sober living home because it does not comply with the Zoning Code and fails to justify a reasonable accommodation.**

In November 2015, the City passed the ordinance allowing sober living homes such as the Wilson Property to avoid the general restrictions placed on boardinghouses but requiring them to be separated by at least 650 feet from a group home, another sober living home, or a state-licensed drug and alcohol treatment facility, and requiring the operators to apply for permits. StatAdd-54-65. Thereafter, Ohio House applied to the City for the necessary permits. 14-ER-3226-57. The City's Planning Director denied its applications, primarily because Ohio House could not satisfy the 650-foot separation requirement. 21-ER-4792. Specifically, there were four other facilities within 650 feet of Ohio House's five housing units. 22-ER-4961-63; 14-ER-3100.

Ohio House's attorney wrote the City a letter asking that Ohio House be allowed to operate as a "reasonable accommodation." 26-ER-5669-73. The City denied this request because it was devoid of factual information and would have required a fundamental alteration in the nature of the City's zoning program. 14-ER-3107-12; 22-ER-4975-77.

14

Ohio House appealed the denials to the City's Planning Commission and City Council, which denied the appeals, determining that the application did not meet the findings required by the Code and would result in a fundamental alteration in the nature of the City's zoning program. 25-ER-5557-68; 25-ER-5508-19. The City sent Ohio House a cease-and-desist letter. 26-ER-5736.

### B. Ohio House sues the City and loses on all counts following a jury trial.

Ohio House sued the City, alleging it violated the federal Fair Housing Act ("FHA"), the California Fair Employment and Housing Act ("FEHA"), and California Government Code section 65008. 16-ER-3664-778.

Both sides filed summary judgment motions, which the district court granted in part and denied in part in a detailed order. 1-ER-235-67.

At trial, the evidence showed that the disabled are in fact treated better than the non-disabled. The Zoning Code affords the disabled every housing opportunity available to the non-disabled, and provides additional options available only to the disabled. 21-ER-4688; 22-ER-

4953-54, 4957-60; 23-ER-5097. The evidence also showed that the regulations were intended to prevent the institutionalization and eviction of the occupants of group homes. 20-ER-4376, 4383. Further, the evidence showed that the City harbors no bias against the disabled. 20-ER-4370, 4372-73, 4384; 22-ER-4917-18.

Following an eight-day trial, 1-ER-17-24, the jury reached a special verdict rejecting all of Ohio House's claims. 1-ER-54-57. Ohio House then brought a renewed JMOL motion and a new-trial motion, and sought post-trial equitable relief under California Government Code section 65008, all of which the court denied in detailed orders. 1-ER-2-22, 25-53.

The court entered judgment on September 6, 2022. 1-ER-23-24.

## STANDARD OF REVIEW

This Court reviews the grant or denial of summary judgment de novo. *Duarte v. City of Stockton*, 60 F.4th 566, 570 (9th Cir. 2023), *cert. denied*, 143 S. Ct. 2665 (2023). It must determine, viewing the evidence in the light most favorable to the non-moving party, whether there are any genuine issues of material fact and whether the district court

correctly applied the relevant law. *Ventura Packers, Inc. v. F/V Jeanine Kathleen*, 305 F.3d 913, 916 (9th Cir. 2002).

"The standard of review for the denial of a motion for judgment as a matter of law after a jury trial is the same as the standard of review for reviewing a jury's verdict: 'both the verdict and the denial of the motion must be affirmed if there is substantial evidence to support the verdict.'" *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999) (quoting *Landes Constr. Co. v. Royal Bank of Canada,* 833 F.2d 1365, 1370-71 (9th Cir.1987)).

On a matter tried to the court, such as Ohio House's motion for judgment under California Government Code section 65008, "[f]indings of fact ... must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility." Fed. R. Civ. P. 52(a)(6). Conclusions of law made after a bench trial are reviewed de novo. *Lawson v. Grubhub, Inc.*, 13 F.4th 908, 913 (9th Cir. 2021).

The Court reviews a district court's order denying a motion for new trial for an abuse of discretion. *Crowley v. Epicept Corp.*, 883 F.3d 739, 748 (9th Cir. 2018).

17

The Court also reviews for an abuse of discretion the district court's formulation of jury instructions and the special verdict form, and reviews de novo whether instructions accurately state the law. *Skidmore ex rel. Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1065 (9th Cir. 2020) (en banc); *Saman v. Robbins*, 173 F.3d 1150, 1155 (9th Cir. 1999). The Court considers the instructions as a whole, and will not reverse if an "error is more probably than not harmless." *Skidmore*, 952 F.3d at 1065 (citation omitted).

The Court reviews evidentiary rulings for an abuse of discretion. *Harper v. City of Los Angeles*, 533 F.3d 1010, 1030 (9th Cir. 2008). The Court must find not only that the district court abused its discretion but also that the error was prejudicial, meaning that it more probably than not tainted the verdict. *Id*.

## SUMMARY OF ARGUMENT

The City enacted ordinances to accommodate sober living homes, granting them benefits and privileges unavailable to residences serving the non-disabled, with corresponding regulations. Seeking to take advantage of the benefits and privileges while bypassing the regulations, Ohio House sued the City, claiming discrimination on the basis of

disability. It now appeals a judgment following a jury verdict in the City's favor, but is unable to identify any error in the proceedings below.

The City's ordinances are not discriminatory, because on their face they afford Ohio House all opportunities available to residences serving the non-disabled, and because the evidence showed that they actually benefit the disabled.

The City did not improperly deny Ohio House a reasonable accommodation, because the evidence showed that the accommodation it requested would have resulted in a fundamental alteration in the nature of the City's zoning program.

The evidence showed that, in limiting the density of sober living homes, the City was not engaging in a pattern or practice of discrimination.

The facts found by the district court and the jury precluded any relief for Ohio House under California Government Code section 65008, but in any event Ohio House brought its claim after the applicable limitations period had passed.

The district court properly granted the City summary judgment on Ohio House's disparate impact claim, because Ohio House failed to present any evidence that established a disparate impact.

The district court acted well within its discretion in denying Ohio House's request for a new trial that raised insubstantial bases.

The State's proposed amicus brief presents multiple arguments that are not properly before this Court, but even if they were to be considered, they are without merit.

Finally, Ohio House improperly asks this Court to assign this case to a different judge, without providing any cognizable basis for this request.

## ARGUMENT

I. **The District Court Correctly Denied Ohio House's Summary Judgment and Renewed JMOL Motions with Regard to Facial Discrimination.**

Ohio House's principal argument on appeal is that the district court should have ruled in its favor on its facial discrimination claim on its summary judgment motion and on its renewed JMOL motion. AOB-25-44, 49-51, 55-58. This argument fails, because the Zoning Code is *not* discriminatory on its face. But even if it were, the City defeated any

20

liability by presenting, both on summary judgment and at trial, sufficient evidence that the Zoning Code actually benefits the disabled.

### A.    The Zoning Code is not facially discriminatory because it treats the disabled more favorably than the non-disabled.

Ohio House maintains that the Zoning Code is facially discriminatory.  AOB-1-2, 17-22, 25-44, 49-51, 55-58.  It is not.  The Zoning Code allows the disabled to enjoy all accommodations available to the non-disabled and many that are not.

In reviewing a facial challenge, this Court is limited to reviewing the text of the ordinance itself.  *Calvary Chapel Bible Fellowship v. Cnty. of Riverside*, 948 F.3d 1172, 1177 (9th Cir. 2020).  Ohio House strays beyond these limits to craft its "facial discrimination" arguments.  *See, e.g.*, AOB-38 ("[W]hether boardinghouses and group homes are similarly situated must be considered in light of the undisputed fact that no boardinghouses exist in the City[4] nor have any ever applied for a CUP [Conditional Use Permit].")  It justifies such digressions by citing *Rusak v. Holder*, 734 F.3d 894, 897 (9th Cir. 2013), which merely recognizes that

---

[4] The evidence at trial showed that this "undisputed fact" is actually false.  23-ER-5129-30.

judges are allowed to apply common sense understandings (in that case, that the rape of a child is traumatic), not that facial discrimination can be proved through evidence outside the face of the enactment. It also cites *431 E. Palisade Ave. Real Est., LLC v. City of Englewood*, 977 F.3d 277, 285 (3d Cir. 2020), which merely directed a court to determine the meaning of an ambiguous ordinance, not to make factual determinations. *Id.* at 284-85.

In Ohio House's view, any code provision that mentions the disabled or treats them "differently" than others, is illegal discrimination, even if it treats the disabled more favorably than the non-disabled. AOB-20, 28. That is not the standard. If everyone who treats a person "differently" is liable for discrimination, then anyone who accords a disabled person favorable treatment would be liable under the antidiscrimination laws.

The correct rule is that "[a] facially discriminatory policy is one which on its face applies *less favorably* to a protected group." *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1048 (9th Cir. 2007) (emphasis added); *Gomez v. Quicken Loans, Inc.*, 629 F. App'x 799, 801-02 (9th Cir. 2015) (quoting *Community House* and interpreting *De La Cruz v. Tormey*, 582 F.2d 45, 49 (9th Cir. 1978) (cited at AOB-26) to apply where "the

policy applies less favorably to a protected group"). *Frank v. United Airlines, Inc.*, 216 F.3d 845, 854 (9th Cir. 2000) (cited at AOB-26) likewise explains that discrimination is shown by "a policy which on its face applies less favorably to one gender."

Specifically, the FHA makes it unlawful to "discriminate *against* any person ... because of a handicap." 42 U.S.C. § 3604(f)(2) (emphasis added). According to the Supreme Court, "[t]o 'discriminate against' a person ... would seem to mean treating that individual worse than others who are similarly situated." *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1740 (2020).

This rule applies equally to FEHA claims. The State cites California Code of Regulations title 2, section 12040(c), which defines a "[f]acially discriminatory policy" as one that "explicitly conditions a housing opportunity on a protected basis, takes adverse action based on a protected basis, or directs adverse action to be taken based on a protected basis." Proposed Amicus Brief ("PAB") 14. The State glosses over the fact that the California courts have adopted the principle this Court has enunciated: "we can draw an inference of discrimination only if plaintiff can show that others not in the protected class were treated

23

more favorably." *Gibbs v. Consol. Servs.,* 4 Cal. Rtpr. 3d 187, 191 (Ct. App. 2003) (quoting *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1422-23 (9th Cir. 1990)) (internal quotation marks omitted).[5]

Ohio House and the State did not and cannot show that the City's zoning regulations apply less favorably to the disabled, or treat them worse than others who are similarly situated, because the disabled are offered all the opportunities available to the non-disabled and additional opportunities that are not available to the non-disabled.

Sober living homes such as Ohio House have the option of proceeding under the general boardinghouse regulations or the sober living home regulations—an option not open to businesses serving the non-disabled. 22-ER-4958-4560.

As to the additional opportunities, the Zoning Code allows group and sober living homes to house more residents, and to operate in more districts, than any multiple-rental home open to the non-disabled. *See supra* at pp. 10-13. Disabled persons residing in sober living homes

---

[5] *Gibbs* and *Rose* are employment discrimination cases. However, "[i]n examining discrimination issues under the [FHA], we frequently draw from employment discrimination analysis." *Cmty. House,* 490 F.3d at 1048 n.3.

renting to up to six persons can live in Single-Family Residential; non-disabled persons cannot live in multiple-rental homes in those districts. StatAdd-129. Disabled persons residing in sober living homes renting to more than six persons can live in multiple districts; non-disabled persons cannot live in multiple-rental homes renting more than six rooms or to more than six persons anywhere in the City. StatAdd-129; *see also* PAB-15 (conceding that the Zoning Code relieves group homes of some of the restrictions it places on boardinghouses—specifically, "a 1,000-foot spacing requirement, exclusion from a single-family residential zone," and "a six-person and six-room limit").

The Zoning Code thus allows the disabled every opportunity open to the non-disabled, plus others not available to the non-disabled.

The primary basis of Ohio House's discrimination claims is that there are additional regulations that apply to group and sober living homes that do not apply to boardinghouses.[6] AOB-21, 28-36. From this, it concludes: "[t]he Zoning Code imposes significantly more burdens on

---

[6] Despite its emphasis in this appeal on multiple special rules the Zoning Code applies to group and sober living homes, Ohio House's counsel ultimately assured the jury that "[t]his case is not about those rules," and "Ohio House has no problem with the rules," and instead is about only the "650[-foot] separation." SER-34-35.

group homes than boardinghouses."[7]  AOB-36.  But anyone who considers the additional regulations too onerous could instead exercise the options available to businesses serving the non-disabled; anyone, disabled or not, can live in a boardinghouse.  10-ER-2267-68.

Ohio House insists that the City's defense "erroneously focuse[d] on its worse treatment of boardinghouses."[8]  AOB-36-38.  But, while it is certainly true that the Zoning Code treats boardinghouses in general worse than group or sober living homes, that ultimately is not the point. The point is that businesses like Ohio House that cater to the disabled have the option of being subject to the special regulations available only to them, and *also* to the options open to businesses that cater to everyone.

Ohio House speculates that the City does not allow sober living homes to elect which regulations to proceed under, because it does not

---

[7] Ohio House then contradicts this argument by stating: "[A] comparison between the City's treatment of boardinghouses and its treatment of group homes is *not* the appropriate measure for determining whether the City's group home regulations violate the FHA and FEHA."  AOB-38 (emphasis added).

[8] Such a focus would not have profited the City in the end, because the jury was specifically instructed that "[t]he City may not justify the facial discrimination of its group home regulations by claiming that it treats others less favorably than it treats group homes for persons with disabilities."  3-ER-563.

see anything in the Zoning Code expressly allowing such an election. AOB-38-40. But it also cannot point to anything in the Code that precludes this election. On summary judgment, the City confirmed that it did not expand the Zoning Code to impose such a restriction. 10-ER-2267-68. Rather, the City allows group homes "the option to apply for a permit under either set of regulations and ignore the other," an option the Zoning Code nowhere precludes. 10-ER-2267. The trial testimony was in accord. 22-ER-4958-4960.

Thus, to determine facial discrimination, the proper comparison is between the opportunities the Zoning Code offers to businesses serving the non-disabled and the wider range of opportunities it offers to businesses serving the disabled. In *Sailboat Bend Sober Living, LLC v. City of Fort Lauderdale*, 46 F.4th 1268 (11th Cir. 2022), 1277-78, the Eleventh Circuit came to the seemingly obvious conclusion that, where the disabled are offered options that include options offered to the non-disabled, the differences between those options do not amount to discrimination.

In *Sailboat Bend*, the city's zoning ordinance permitted no more than three unrelated persons to live together. *Id.* at 1273. However, the

ordinance carved out exceptions for Community Residences, which were allowed to accommodate more than three unrelated people if they had disabilities. *Id.* But the additional opportunities open to the disabled came with additional restrictions. Some Community Residences were subject to distancing requirements, similar to the City's here. *Id.* at 1273-74. Furthermore, unlike dwellings housing three or fewer unrelated persons, Community Residences were required to install an automatic sprinkler system. *Id.* at 1272.

Sailboat Bend was a sober living facility housing up to eleven individuals who were recovering from addiction and therefore disabled under federal and city law. *Id.* at 1270, 1274. Sailboat Bend sued the city under the FHA and the Americans with Disabilities Act, alleging, among other things, that the zoning ordinance facially discriminated against people with disabilities. *Id.* at 1270.

The district court entered summary judgment in the city's favor, and the Eleventh Circuit affirmed. *Id.* at 1271. It concluded that the zoning ordinance did not discriminate against the plaintiffs, and in fact "work[ed] to their decided benefit." *Id.* at 1270. And "[b]ecause the Zoning Ordinance undeniably treats individuals with disabilities *more*

28

*favorably* than it treats similarly situated, non-disabled individuals, we conclude that the Zoning Ordinance is not facially discriminatory at all." *Id.* at 1274.

Here, as noted, Ohio House's key argument on facial discrimination is that "[t]he operative text of the City's regulations imposed unique requirements and burdens on disabled housing." AOB-28-36. This is precisely the argument made by the *Sailboat Bend* plaintiffs—that "the Ordinance does not treat individuals with disabilities more favorably because it places burdensome requirements on them that it does not place on individuals without disabilities." 46 F.4th at 1278. The Eleventh Circuit identified the fallacy in this argument: It "ignores that these 'burdens' uniquely apply to individuals with disabilities because they are the only category of people who may live in Community Residences of more than three unrelated individuals and thereby benefit from the opportunity." *Id.*

The same conclusion applies here. The "burdensome requirements" underlying Ohio House's discrimination claims uniquely apply to individuals with disabilities because they are the only category of persons who may live in group or sober living homes, and thus are the only

29

category of persons freed from the restrictions the Zoning Code places on everyone else who wishes to live in a multiple-rental home.

The Eleventh Circuit ultimately concluded in *Sailboat Bend* that "similarly situated, unrelated disabled persons are treated better by the City's Ordinance than unrelated, non-disabled persons—after all, groups of three or more unrelated, disabled persons may live together in residential zones, whereas three or more unrelated, non-disabled persons may not." 46 F.4th at 1279; *see also Oxford House-C v. City of St. Louis*, 77 F.3d 249, 251-52 (8th Cir. 1996) ("Rather than discriminating against Oxford House residents, the City's zoning code favors them on its face. The zoning code allows only three unrelated, nonhandicapped people to reside together in a single family zone, but allows group homes to have up to eight handicapped residents.").

Here, the Zoning Code presents the same situation. The regulations on group and sober living homes of which Ohio House complains apply to the disabled because the disabled are the only persons who can take advantage of extra opportunities offered to such homes. Consequently, as the Eleventh Circuit concluded, "the Plaintiffs' claims fail under the FHA ... at step one of any analysis." 46 F.4th at 1279.

**B.** **The district court did not err in denying Ohio House's motion for summary judgment, because there were triable issues of fact on the City's justifications.**

Ohio House complains that the district court failed to grant it partial summary judgment on facial discrimination. AOB-25-45.

Ironically, notwithstanding Ohio House's protestations, the district court actually ruled in its favor on the issue of facial discrimination. It held:

> To the extent that the challenged provisions explicitly treat Group Homes and Sober Living Homes differently from other dwellings that are not defined by disability status, they support a finding of facial discrimination.

> Because the Ordinances on their face treat Sober Living Homes and Group Homes differently than similar dwellings for non-disabled individuals (i.e., boardinghouses), Ohio House has made out a prima facie case of intentional discrimination.

1-ER-252.[9]

_____

[9] The district court thereby held that a mere difference in treatment is enough to establish facial discrimination. It apparently based this conclusion on language that can be found in *Community House* to the effect that "[w]ith regard to facially discriminatory housing policies, ... 'a plaintiff makes out a prima facie case of intentional discrimination under the [FHA] merely by showing that a protected group has been subjected to explicitly differential—i.e. discriminatory—treatment.'" 1-ER-251 (quoting 490 F.3d at 1050).

*(footnote continues on following page)*

Nevertheless, Ohio House complains that the court did not expressly grant it partial summary judgment on facial discrimination, but Ohio House never asked the court to do so. Its motion listed ten issues on which it sought summary judgment or partial summary judgment. 14-ER-3029-31. None of these requested summary judgment on the basis of facial discrimination.

Ohio House's motion did seek summary judgment on the ground that various provisions of the Zoning Code were supposedly discriminatory or in violation of federal or state statutes. 14-ER-3029-31. But that is not the same as a holding that a statute discriminates on its face. Even assuming a policy that treats the disabled differently is facially discriminatory, it is still not actionable—as the district court recognized—if the restriction benefits the protected class. 1-ER-255 (citing *Cmty. House*, 490 F.3d at 1050).

---

But *Community House* holds that "[a] facially discriminatory policy is one which on its face applies less favorably to a protected group." 490 F.3d at 1048. In that case, there was no controversy over whether the differential policy treated one group less favorably and was therefore discriminatory, because it allowed men to occupy a shelter but excluded women and families.

On this point, the City demonstrated in opposition to Ohio House's summary judgment motion that its differential treatment of group and sober living homes benefitted the disabled. 10-ER-2256-58. It presented evidence that it had enacted the contested provisions of its Zoning Code for non-discriminatory reasons, including to free the disabled from institutional style living, and for the well-being of both the clients of group homes and the community. 10-ER-2269.

Consequently, the district court necessarily denied Ohio House's summary judgment motion on the ground that the motion raised triable issues of fact:

> The parties have presented conflicting evidence that establishes a genuine dispute as to whether the Group Home Regulations and Ordinances benefit or burden the disabled. This is a question that requires a fact-intensive inquiry that cannot be conducted at the summary judgment stage. Thus, the Court DENIES both parties' summary judgment motions as to whether or not the provisions benefit the disabled.

1-ER-257.

Ohio House concludes its facial discrimination summary judgment argument by briefly asserting that "[t]he City failed to establish that its regulations were the least restrictive alternative under FEHA"—an issue that arises only under the FEHA, not the FHA. AOB-41. Ohio House did

not actually move for summary judgment on this ground. 14-ER-3029-3067. (It was an issue at trial, discussed below at pages 38-39.) On appeal, Ohio House makes this argument by citing *Turning Point, Inc. v. City of Caldwell*, 74 F.3d 941, 945 (9th Cir. 1996), which held after a full trial on the merits that nuisance law enforcement would be a viable alternative to annual review of a special use permit. Nothing in this summary judgment record supports the notion that nuisance law enforcement would be a viable alternative to a separation requirement in avoiding the institutionalization of neighborhoods.

The further failing of Ohio House's complaint that the district court did not grant it partial summary judgment on facial discrimination is that it cannot establish any resulting prejudice. Even without granting partial summary judgment for Ohio House, the court instructed the jury that "you *must* accept as true that Ohio House has offered sufficient evidence to prove that [various enumerated] provisions of the City's group home regulations are facially discriminatory." 3-ER-555 (emphasis added). It then instructed the jury on how the City might overcome this holding of facial discrimination. 3-ER-557-563, 580. Ohio House thereby enjoyed all the benefits of a partial summary judgment

34

ruling on facial discrimination in its favor, regardless of whether the court actually granted it.

### C. The district court did not err in denying Ohio House's renewed JMOL motion, because substantial evidence supported the City's justifications.

Ohio House seeks reversal because the district court "erred in denying Ohio House's motion for JMOL on facial discrimination." AOB-41-43, 49-51. The district court examined what it referred to as "[the City's] facially discriminatory regulation" and "the facial discrimination of its group home regulations," but concluded that the evidence presented at trial showed that the facially discriminatory regulations were sufficiently justified by the benefits they afforded the disabled. 1-ER-6-8.

The trial evidence showed that the disabled are in fact treated better than the non-disabled. Under the Zoning Code, the evidence showed, the disabled have a "more-than-equal opportunity," because they have all the housing options open to the non-disabled and others open only to the disabled. 22-ER-4953-54, 4957-60; 23-ER-5097.

As the district court explained, "Ohio House has failed its burden in demonstrating that the only conclusion that could be reached was that

the City could not justify its facially discriminatory regulation." 1-ER-10. It cited a broad swath of evidence from the trial record,[10] coupled with the text of the Zoning Code, to support the conclusion that the regulations actually benefit the disabled. 1-ER-7-9.

Later, in its brief, Ohio House selectively quibbles over whether there was any trial evidence in support of the jury's finding that the City's regulations provided benefits to the disabled. AOB-49-51. To do so, it must ignore testimony that the regulations were intended to prevent the institutionalization and eviction of the occupants of group homes, and that the regulations gave the operators of group homes all the options available to non-disabled persons, plus other options available only to the disabled. 20-ER-4376, 4383; 22-ER-4959-60. Indeed, Ohio House's own representatives conceded that the disabled would benefit if the regulations afforded them more housing opportunities than are available to the non-disabled, which is exactly what they do. 17-ER-3894-95; 18-ER-4128-29, 4144-46. Ohio House's co-founder also conceded that the City's requirement that sober living homes have rules is beneficial, so long as the rules are reasonable. 20-ER-4546.

---

[10] 18-ER-4132, 4134, 4145; 22-ER-4956-59; 23-ER-5143-45, 5159.

The State argues that the City's evidence showing its regulations to be beneficial was insufficiently objective and quantitative. PAB-17-19. The argument fails because any evidence that has a tendency to make a fact more or less probable is relevant, Fed. R. Evid. 401, and there was substantial evidence that the City's regulations benefited disabled persons. The State overlooks Rule 401 and bases its argument on California Government Code sections 8899.50 and 65583. Neither provision says anything about what type of evidence is required to prove benefit when defending against an FEHA claim. Section 8899.50 simply declares that a public agency must administer its programs and activities relating to housing and community development in a manner to affirmatively further fair housing. Cal. Gov't Code § 8899.50(b)(1). Section 65583 merely specifies what should be included in the "housing element" of a community's general plan—which was not explored in the proceedings below.

Ohio House raises another argument that is largely semantic. It maintains that the City's Director of Economic and Development Services Jennifer Le misspoke when she testified that group and sober living homes are boardinghouses that would not be in compliance if not for the

special dispensations the Code provides for the disabled. AOB-41-43. For this it relies on statements in City documents to the effect that "[g]roup homes ... are not considered to be boardinghouses." AOB-43 n.9. But, as Ms. Le explained to the jury, such statements were merely a reflection of the fact that group homes, while they otherwise would come within the regulatory limitations imposed on boardinghouses, are exempt from such limitations. 23-ER-5096-97.

Ohio House adds a throwaway argument that "the City failed to establish that its group home regulations were the least restrictive alternative under FEHA because it never enforced its general nuisance laws against group homes." AOB-51. The State likewise argues that the City failed to prove that its zoning regulations were the least restrictive means of achieving its goals. PAB-20.

As to this contention, the jury was instructed:

With respect to Ohio House's FEHA claim only, the City's facially discriminatory regulation also must be the "least restrictive means of achieving" the City's identified purpose.

3-ER-559. The jury rejected all of Ohio House's claims, and the district court correctly reasoned, on the basis of substantial evidence presented at trial, that the 650-foot requirement was the least restrictive means of

accomplishing its goals. 1-ER-8, 16. Indeed, the requirement was less restrictive than the requirement imposed on multiple-rental homes serving the non-disabled, which Ohio House did not question. 21-ER-4688; 22-ER-4957-58. In establishing that its regulation is the "least restrictive means," a government is "under no obligation to dream up alternatives that the plaintiff himself has not proposed." *Walker v. Beard*, 789 F.3d 1125, 1137 (9th Cir. 2015). Ohio House proposed no alternative means of achieving the City's goal of preventing the institutionalization of neighborhoods; it merely demanded that the regulations the City implemented to accomplish that goal not be applied to it.

In reviewing denial of a renewed JMOL motion, this Court "give[s] significant deference to the jury's verdict and to the nonmoving parties," and it will affirm if the district court "properly followed that standard of review when it denied" the motion. *A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 453 (9th Cir. 2013). Here, the jury found that the City did not discriminate, and the district court meticulously applied the rules governing JMOL motions. 1-ER-4-5, 54. Ohio House provides no basis for this Court to overturn either decision.

**D.  The State's claim that the City failed to make necessary showings provides no grounds for reversal.**

The State insists that "a comparison between group homes for people with disabilities and boarding houses is inapt," because "[t]he communal living, peer support, and other assistance that group homes provide are essential housing resources for people with disabilities, who may not be able to live without them, unlike the non-disabled residents of boarding houses."  PAB-15.  In fact, California law prohibits an unlicensed facility like Ohio House from providing "care or supervision" that is "essential for sustaining the activities of daily living or for the protection of the individual."  Cal. Health & Safety Code §§ 1502(a)(1), 1503.5(a)(1), (b).  The Zoning Code requires for group homes, including sober living homes, that "[o]ccupants must not require and operators must not provide 'care and supervision' as those terms are defined by Health and Safety Code section 1503.5."  StatAdd-144, 150.

The unspoken assumption behind the State's contention is that, if a sober living home chose to operate as a boardinghouse, thereby subjecting itself to the same restrictions as a residence housing the non-disabled, it would not be allowed to provide the same environment it would as a sober living home.  The State does not attempt to justify this

40

assumption, because it is false. Under the Zoning Code, a sober living home can operate as a boardinghouse and thereby be subject to precisely the same restrictions that apply to housing for non-disabled persons. 22-ER-4954-55.

This fundamental fact belies the State's argument that the City's policy fails to account for the special housing needs of persons with disabilities, fails to remove governmental constraints on housing for people with disabilities, and/or fails to give highest priority to factors that limit or deny fair housing choice or access to opportunity for people with disabilities. PAB-16 (citing Cal. Gov't Code §§ 65583(a)(5), (a)(7), (c)(10)(A)(iv)). In fact, the City enacted a new set of regulations allowing group and sober living homes to operate where boardinghouses may not and with more occupants than are allowed for boardinghouses in specific recognition of the fact that a core purpose of the FEHA and FHA is "to provide a broader range of housing opportunities to the handicapped; to free the handicapped, to the extent possible, from institutional style living; and to ensure that handicapped persons have the opportunity to live in normal residential surroundings and use and enjoy a dwelling in

a manner similar to the way a dwelling is enjoyed by the non-handicapped." StatAdd-29-30, 54, 76, 90.

### E. Ohio House's facial discrimination claim does not support a discriminatory statement claim.

Ohio House presents a perfunctory argument that the City made a "discriminatory statement" because, it alleges, the City's regulations were facially discriminatory. AOB-43-44 (citing 42 U.S.C. § 3604(c)). This argument necessarily fails because the regulations were not facially discriminatory, and had no discriminatory effect, for all the reasons discussed above.

It is also nonsensical. Section 3604(c) prohibits discriminatory statements "with respect to the sale or rental of a dwelling." The City is not selling or renting a dwelling, let alone making a statement about doing so. It has merely codified ordinances offering options to the disabled not available to others.

## II. The District Court Correctly Denied Ohio House's Summary Judgment and Renewed JMOL Motions with Regard to Reasonable Accommodation.

Ohio House argues that the district court did not correctly resolve its reasonable accommodation claim in ruling on the motions for summary judgment and JMOL. Procedurally, it maintains that the district court "failed to rule on Ohio House's partial summary judgment motion" and "did not separately consider" the claim in denying the JMOL motion. AOB-44. Substantively, it argues that the reasonable accommodation provision of the Zoning Code violates the FHA and FEHA, and that the City's policies in implementing that provision violate those statutes. AOB-44-47. It is wrong on both counts.

Although it purports to challenge the district court's denials of its summary judgment and renewed JMOL motions, Ohio House's substantive arguments on reasonable accommodation studiously avoid mentioning either motion. AOB-44-47. Instead, it argues reasonable accommodation in the abstract, as if it were an issue of fact to be determined in this Court without reference to the proceedings in the court below.

43

**A.     The district court correctly denied the summary judgment motion because, among other reasons, there were triable questions of fact.**

At the outset, Ohio House's attempt to appeal the district court's summary judgment ruling on reasonable accommodation, which allowed the issue to go to trial on the merits, is both inappropriate and futile.  The Supreme Court has held that this may not be done:

> May a party ... appeal an order denying summary judgment after a full trial on the merits?  Our answer is no.

*Ortiz v. Jordan*, 562 U.S. 180, 183-84 (2011) (footnote omitted); *accord Williams v. Gaye*, 895 F.3d 1106, 1122 (9th Cir. 2018).[11]

On appeal, Ohio House asserts that the district court "failed to rule" on reasonable accommodation in its summary judgment order.  AOB-44. It did not bring this supposed failing to the court's attention at the time, preferring instead to wait until after an eight-day jury trial to assert this supposed failure as a ground for overturning the jury's verdict.

---

[11] This limitation does not apply to pure questions of law resolved in an order denying summary judgment. *Dupree v. Younger*, 598 U.S. 729, 733-34 (2023).  However, Ohio House based its summary judgment motion and bases its appellate arguments on factual claims.  14-ER-3057-59; AOB-46-47.

In fact, though, the court did rule on Ohio House's summary judgment motion. Ohio House and the City filed opposing motions for summary judgment, seeking summary judgment on numerous grounds, including reasonable accommodation. 1-ER-235. The court granted summary judgment on a limited set of issues, and denied both motions on every other ground asserted. 1-ER-235-67.

In its order, the district court examined the reasonable accommodation issue in detail, 1-ER-260-64, correctly noting that "'whether a particular accommodation is reasonable "depends on the individual circumstances of each case" and "requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might allow him to meet the program's standards"'" and, thus, "is rarely suitable for resolution on summary judgment." 1-ER-261 (citing, *inter alia, Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002)). In denying the City's summary judgment motion, the district court found there were "genuine issues of material fact as to whether the City's failure to provide a reasonable accommodation constituted discrimination under the FHA." 1-ER-264.

45

Although the district court's order did not expressly rule on Ohio House's reasonable accommodation argument, the court's denial of the City's motion on the ground that there were "genuine issues of material fact" applies equally to Ohio House's claim. Because there were genuine issues of material fact, the district court could not grant summary judgment for either party. Fed. R. Civ. P. 56.

In arguing reasonable accommodation on appeal, Ohio House has attacked a single subdivision of the Zoning Code, Costa Mesa Municipal Code section 13-200.62(f)(7). AOB-44-46. Section 13-200.62(f) lists eight findings that must be made before a reasonable accommodation request can be granted, "all of which are required for approval." 29-ER-6425-26, Stat.Add-134. Issue (7), the only one Ohio House complains of on appeal, is "[w]hether the existing supply of facilities of a similar nature and operation in the community is sufficient to provide individuals with a disability an equal opportunity to live in a residential setting." *Id.*

As Ohio House acknowledges, AOB-45, the district court agreed with it on this point. In ruling on the summary judgment motion, the court quoted *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1225-26 (11th Cir. 2008), the same case upon which Ohio House now relies, for

46

the rule that "'availability of another dwelling somewhere within the City's boundaries is irrelevant' to the reasonable accommodation analysis." 1-ER-262.

However, as the district court recognized in its summary judgment order, the City had found that Ohio House failed to establish entitlement to several other of section 13-200.62(f)'s eight required findings. 1-ER-238-41. The City determined it could not make the following necessary findings in favor of Ohio House's reasonable accommodation claim:

> [(f)(2)] The requested accommodation is necessary to provide one (1) or more individuals with a disability an equal opportunity to use and enjoy a dwelling.

> [(f)(4)] The requested accommodation is consistent with surrounding uses in scale and intensity of use.

> [(f)(8)] The requested accommodation will not result in a fundamental alteration in the nature of the city's zoning program.

14-ER-3109-11.

Any one of these negative findings supported the denial of Ohio House's reasonable accommodation claim. Unless it could establish as a matter of undisputed fact that each of these findings was illegal and unwarranted—which it does not attempt to do on appeal—Ohio House

cannot maintain that the finding on issue (7) could serve as a ground for summary judgment.

In its ruling, the district court carefully summarized Ohio House's arguments that the City had improperly denied its request for an accommodation, and the City's responses.  1-ER-260-264.  The court correctly determined that "the evidence here reflects genuine issues of material fact as to whether the City's failure to provide a reasonable accommodation constituted discrimination under the FHA."  1-ER-264. On appeal, Ohio House makes no argument to the contrary.

## B.   The district court correctly denied the renewed JMOL motion because, among other reasons, the jury found against it on the basis of substantial evidence.

Without supporting authority or argument, Ohio House complains that in denying its renewed JMOL motion, the district court "did not separately consider" its claim that the City's reasonable accommodation requirements "violate and are preempted by the FHA and FEHA."  AOB-44.   To the contrary, the court listed Ohio House's "reasonable-accommodation claim" as one of five claims Ohio House had made and ruled that "under Fed. R. Civ. P. 50(b), there was adequate evidence to support a reasonable jury's verdict that Ohio House failed to establish its

claims." 1-ER-6. The court's order examined the reasonable accommodation claim in detail. The court concluded on the basis of trial evidence that "the jury could have concluded that the denial of accommodation requests were reasonable and not motivated at all by discriminatory intent," and that "the jury could have concluded that granting the request [for accommodation] could have constituted a fundamental change in the City's zoning scheme and thus the accommodation was unreasonable." 1-ER-12, 16. Specifically, the court found that "[t]he jury could have concluded that the 650-feet requirement was fundamental to the character of the community and that 650 feet was the least restrictive means of accomplishing such goals." 1-ER-16.

In denying the renewed JMOL motion, the district court correctly observed that the City presented the following evidence:

- "[City Director of Economic and Development Services] Ms. Le testified having a cluster of group homes increases the number of adults living in an area, which increased parking and traffic ...."

- "[T]he City offered evidence that having a higher number of persons per households like Ohio House strained the City's infrastructure ...."

- "The City wanted to reduce these effects to prevent the 'institutionalization' of residential neighborhoods and the degradation of the residential nature to benefit all

> residents—including the residents at sober living homes."

1-ER-16; *see also* 22-ER-4947-49.

More generally, the evidence showed that the City found the separation requirement to be necessary to address many problems encountered with sober living homes, including institutionalization. 21-ER-4696-97, 4707-08. Additionally, the City included in its regulations the discretionary power to deviate from the separation requirement if the need arose. 21-ER-4702-03. The jury was more than justified in finding that that the City's accommodations were reasonable.

Again, Ohio House challenges section 13-200.62(f)(7) of the Zoning Code, which requires that the Director, in addressing a reasonable accommodation request, must consider "[w]hether the existing supply of facilities of a similar nature and operation in the community is sufficient to provide individuals with a disability an equal opportunity to live in a residential setting." AOB-44-46; 29-ER-6426. It neglects to mention, though, that the district court agreed with it on this point and so instructed the jury: "The existing supply of facilities of a similar nature and operation in the community that could provide individuals with a disability an opportunity to live in a residential setting does *not* satisfy a

50

disabled person's right to a dwelling opportunity of his or her choice." 3-ER-577 (emphasis added). Despite this instruction in Ohio House's favor, the jury found that it had failed to prove that the City "unlawfully refused to make a reasonable accommodation." 1-ER-55.

Ohio House also briefly argues that the City violated the FHA and FEHA by failing to grant any requests to reduce the 650-foot separation requirement as an accommodation. AOB-46-47. However, an "[a]ccommodation is not reasonable if it ... requires a fundamental alteration in the nature of the program.'" *Schwarz*, 544 F.3d at 1220. "[A] proposed accommodation amounts to a 'fundamental alteration' if it would eliminate an 'essential' aspect of the relevant activity.'" *Id*. "Whether a particular rule is 'essential' to a zoning scheme will, of course, turn on the facts of each case ...." *Id*. at 1221.

In this case, the 650-foot separation requirement lies at the heart of the City's regulation of group homes. The separation requirement was essential to prevent the institutionalization of residential neighborhoods, and other ills resulting from overcrowding, thereby benefiting all residents, including those in sober living homes. 22-ER-4948-49. The evidence presented at trial fully supported the conclusion that relaxing

51

the separation requirement would have effected a fundamental alteration in its zoning scheme. 21-ER-4695-97, 22-ER-4949-50, 4974-75, 4979-80.

Ohio House argues that the City's consistent denial of requests to decrease the 650-foot requirement is unlawful. AOB-47. But *Schwarz* teaches the opposite, observing that "if the municipality routinely waives the rule upon request, it will be harder to show that the rule is 'essential.'" 544 F.3d at 1221. The City has resisted efforts to alter the 650-foot separation requirement because it is essential to its regulation of group homes.

Ohio House cites *Anderson v. City of Blue Ash*, 798 F.3d 338, 363 (6th Cir. 2015), for the rule that "categorical and rigid rules violate the FHA and FEHA." AOB-47. The decision does not so hold. It holds only that granting a single exception to a zoning ordinance does not necessarily constitute a fundamental alteration. 798 F.3d at 363.

Ohio House's citation to *Larkin v. State of Michigan Department of Social Service*s, 89 F.3d 285, 291 (6th Cir. 1996), for the rule that preventing "overconcentration and institutionalization" is not "a legally cognizable justification for disability discrimination" fares no better.

AOB-47. Rather, the court there held that "the prohibition against excessive concentration is not before us." 89 F.3d at 289 n.3.

Nor does *Larkin* hold, as Ohio House claims, that institutionalization cannot justify a spacing requirement. AOB-47. *Larkin* held the exact opposite, ruling that "deinstitutionalization is a legitimate goal for the state to pursue." 89 F.3d at 291. That decision held only that the 1,500-foot spacing requirement in that case was invalid because the state did not explain how the spacing requirement "fosters deinstitutionalization in any real way," but the court "express[ed] no opinion on whether a more narrowly tailored law prohibiting such a concentration would pass muster under the FHAA[12]." *Id*. at 291, 292 n.4.

On the record before it, the district court had no choice but to deny Ohio House's renewed JMOL motion with regard to its reasonable accommodation claim.

---

[12] The Fair Housing Amendments Act ("FHAA") is the legislation by which Congress extended the protections of the FHA to disabled persons. *United States v. Cal. Mobile Home Park Mgmt. Co.*, 29 F.3d 1413, 1416 (9th Cir. 1994).

**C. The State's "reasonable accommodation" argument provides no grounds for reversal.**

The State improperly asks this Court to discard the jury's finding on the reasonable accommodation claim on the basis of legal issues not presented below, speculation about what evidence was presented to the jury, and its own take as an alternative finder of fact. PAB-21-25.

First, the State argues that California Code of Regulations, title 2, section 12177 required the City to undertake a good-faith interactive process in response to Ohio House's request for reasonable accommodation, and that it is unaware that the City did so. PAB-21.

However, the district court was never asked to consider the requirement of a good-faith interactive process under section 12177, or to inform the jury that a finding of such a process was required. The State does not examine the evidence presented at trial to see if it would support its contention that the City did not meet this requirement—the most it can say is that it "appears that the City did not make these interactive efforts." PAB-21. But there is no way of knowing what evidence the City might have presented if this supposed requirement had been raised at trial.

Even so, the jury was informed that the City, under the Zoning Code, can and does propose alternatives when it denies reasonable accommodation requests. 21-ER-4710. The problem in this case was that any accommodation acceptable to Ohio House would have contravened the City's carefully crafted separation requirement, resulting in a fundamental alteration of its zoning policies. 25-ER-5508-19.

Next, the State relies on other regulations—California Code of Regulations, title 2, section 12179(b)(1) and (e), never cited to the district court—for the proposition that "a requested accommodation may *only*[13] be denied if it would constitute an unacceptable 'fundamental alteration,' meaning it would 'change the essential nature of the services or operations' being offered." PAB-21-22 (emphasis added); *see also* PAB-9 n.7.

The jury was instructed that it should find that "Ohio House's claim for reasonable accommodation fails" if it "would have required a fundamental alteration in the nature of City's zoning scheme," 3-ER-576—precisely what section 12179(b)(1) provides. The jury then found

---

[13] The word "only" does not appear in the regulation, which actually provides a long and non-exhaustive list of reasons for which a requested accommodation "may be denied."

by a preponderance of the evidence that Ohio House had failed to prove that the City had unlawfully refused to make a reasonable accommodation in violation of the FEHA. 1-ER-55; *see supra* at pp. 49-50.

Similarly, the State relies on California Government Code section 12927(c)(1) and California Code of Regulations title 2, section 12180(c)(6), for the proposition that the "FEHA and its regulations specifically anticipate that cities will need to adjust their zoning codes to reasonably accommodate disability-related housing needs." PAB-23-24. Section 12927(c)(1) is simply the FEHA's definition of "discrimination," listing numerous acts that might be discriminatory, without any mention of an adjustment to zoning codes. Section 12180(c)(6) was never mentioned in the district court proceedings, and for good reason. It merely gives, as an example of a "reasonable accommodation," allowing a homeowner to install a wheelchair ramp that would "extend slightly beyond the permitted set-back requirements" on the subject lot but that otherwise would not affect the general public. If this provision had been argued below to the court or the jury as the standard for reasonable accommodation, the City could have made the obvious point that the

accommodation Ohio House sought (allowing a business housing forty-five adult men in five houses to co-exist with four other similar businesses within 650 feet, 17-ER-3910; 22-ER-4961-63; 14-ER-3100) bore no resemblance to the minor accommodation described in this example.

The State further asserts that "[t]he City's reaction to its claimed concerns also did not consider its obligations under state law to affirmatively furthering [sic] fair housing." PAB-24. It does not cite any evidence in support of this factual allegation, or even point to a place where a representative of the City was asked about it. Likewise, the State peremptorily announces that "[t]he district court's failure to consider the requested accommodation in light of the City's obligations under state law was error," PAB-24—without pointing to a single instance in which the district court failed to, or was even asked to, consider the accommodation in light of a specific state law. In fact, the City's Zoning Code and ordinances state on their face that they are intended "to further the purposes of the FEHA," by, among other things, "provid[ing] comfortable living environments that will enhance the opportunity for the handicapped and for recovering addicts to be successful in their programs." StatAdd-143; 29-ER-6418, 6435.

57

Finally, the State cites *Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 786 (7th Cir. 2002), for the unexceptionable proposition that the FHA (not any California law) "rejects city actions based on 'blanket stereotypes about disabled persons rather than particularized concerns about individual residents.'" PAB-25. It appoints itself the finder of fact on this question. It maintains that the City's conclusion that a greater number of persons per household strained its infrastructure and could create institutionalized residential neighborhoods "*appears* to reflect a concern that other group homes might seek a similar accommodation in the future," and "thus *appears* to rest on 'fears or prejudices' that multiple group homes might seek reasonable accommodations to locate or remain in Costa Mesa." PAB-24-25 (emphasis added).

The actual finder of fact, the jury, reached the opposite conclusion. It was instructed that the City had the burden to prove that "the group home regulations respond to legitimate safety concerns raised by the individuals affected *rather than being based on stereotypes*," and that "[t]he provision is *not based on stereotypes* about persons protected from discrimination." 3-ER-557, 560 (emphasis added). Having been so

instructed and having heard all the evidence, the jury found in the City's favor on all of Ohio House's claims.  1-ER-54-57.

This Court should reject the State's attempt to make the appeal turn on matters not addressed in the district court.

## III. The District Court Correctly Denied Ohio House's Renewed Motion for JMOL with Regard to Pattern and Practice.

Ohio House presents a perfunctory argument that "the City's uncontested admissions to HCD [the California Department of Housing and Community Development] and Ms. Le's testimony regarding the purpose of its group home regulations established, as a matter of law, that disability was a motivating factor in the City's conduct."  AOB-51. This is apparently a reference to reports that the City made to HCD to the effect that it had enacted the regulations to "limit the number and concentration of group homes and sober living facilities in the Multiple Family Residential zones."  AOB-16 (emphasis omitted).  Ohio House does not identify the testimony of Ms. Le on which it purports to rely.

However, these so-called "admissions" do not establish discrimination, let alone a pattern and practice of discrimination.  No one questions that a separation requirement can limit the number and

concentration of group and sober living homes in a given residential zone. The question Ohio House does not address is whether this limitation was enacted to discriminate, or did discriminate, against the disabled.

The evidence at trial showed that the separation requirement was not intended to, and did not, discriminate. The evidence showed that the requirement was a "primary measure" by which the City "allow[ed] people living in group homes to experience a residential environment as opposed to a more institutional environment." 20-ER-4381. It was implemented because some neighborhoods were overwhelmed with group and sober living homes, with five or six such businesses in one block, each housing twenty to thirty residents, resulting in serious overcrowding, noise, and institutionalization of the neighborhood. 21-ER-4696-97; 23-ER-5094, 5118-19. The City found it necessary to impose a separation requirement to prevent these adverse effects. 22-ER-4948-49, 4975. The assistant director the City hired to process group home applications testified that she never saw any evidence that the separation requirement was based on discrimination. 20-ER-4382.

The jury was entitled to accept such testimony over Ohio House's speculation that there was a secret discriminatory purpose behind the

regulations the City forthrightly reported to the State. The jury's refusal to accept Ohio House's unfounded claim of discriminatory intent compelled the district court to reject the pattern and practice and interference arguments made in its renewed JMOL motion. 1-ER-7-9, 11-13.

## IV. The District Court Correctly Denied Ohio House's Motion for Judgment Under California Government Code Section 65008.

Ohio House brought a cause of action alleging the City had violated California Government Code section 65008 by enacting and enforcing zoning regulations that discriminate on the basis of disability. 16-ER-3776-77.

In rejecting this claim, the court found that the Zoning Code "actually advances the housing opportunities of persons with disabilities" and that the benefit it provides to disabled persons clearly outweighs any burden that provision places on them." 1-ER-35. It also ruled that the section 65008 claim was precluded by the jury verdict:

> [T]he jury's factual findings preclude a finding of liability as to Ohio House's § 65008 claim. The Court concludes that it is bound by the jury's finding that the City's sober living housing policy was justified, and thus did not violate any of the statutes advanced by Ohio House.

61

1-ER-52.

These rulings in and of themselves defeated the section 65008 claim, and Ohio House does not challenge them on appeal, compelling affirmance.

Ohio House challenges instead the court's alternative holding that the section 65008 claim was barred by the statute of limitations. AOB-54-55. This holding was correct. California Government Code section 65009(c)(1)(B) provides that an action challenging "the decision of a legislative body to adopt or amend a zoning ordinance" must be filed "within 90 days after the legislative body's decision."

Citing no authority, Ohio House argues that the 90-day statute of limitations does not apply because "[b]y citing and fining Ohio House to force its closure, the City violated §65008 in the administration of its powers to enforce its group home regulations." AOB-55. The district court correctly rejected this argument, because "Ohio House's challenge ... is based on alleged defects in the ordinances themselves, not in the manner or circumstances in which they are applied." 1-ER-39.

The court relied on *County of Sonoma v. Superior Court*, 118 Cal. Rptr. 3d 915 (Ct. App. 2010), which holds that "where a party brings a

facial challenge to a zoning ordinance, the limitations period begins to run on the date the ordinance becomes effective." *Id.* at 924; *accord Arcadia Dev. Co. v. City of Morgan Hill*, 129 Cal. Rptr. 3d 369, 375 (Ct. App. 2011) ("It is a facial challenge because the alleged defect is the ordinance itself."). If there is one thing that the Opening Brief makes crystal clear, it is that Ohio House is likewise mounting a facial challenge to the Zoning Code. The district court had no choice but to find that the section 65008 claim came years too late.

## V.  The District Court Correctly Granted Summary Judgment for the City on Ohio House's Disparate Impact Claim.

The district court granted the City's summary judgment motion on disparate impact because Ohio House had failed to present proof sufficient to show that the challenged practice had a significantly adverse or disproportionate impact on a protected group.[14]  1-ER-259.  "[A] plaintiff bringing a disparate-impact claim challenges practices that have a 'disproportionately adverse effect on minorities' and are otherwise unjustified by a legitimate rationale." *Texas Dep't of Hous. & Cmty.*

---

[14] However, the court did not preclude Ohio House from claiming discriminatory purpose, which the jury was later instructed to address. 1-ER-255, 260; 3-ER-564.

*Affairs v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 524 (2015). Disparate-impact liability does not mandate "the displacement of valid governmental policies." *Id.* at 540. "The FHA is not an instrument to force housing authorities to reorder their priorities." *Id.* "Governmental or private policies are not contrary to the disparate-impact requirement unless they are 'artificial, arbitrary, and unnecessary barriers.'" *Id.* at 543; *accord Sw. Fair Hous. Council, Inc. v. Maricopa Domestic Water Improvement Dist.*, 17 F.4th 950, 955 (9th Cir. 2021).

In this case, the district court granted summary judgment in favor of the City on Ohio House's disparate impact claim because "Ohio House has failed to present 'statistics or other proof' sufficient to show that the challenged practice had a 'significantly adverse or disproportionate impact' on a protected group." 1-ER-259. The court found that Ohio House "has not provided any statistics to show that the number of Group Homes has decreased." 1-ER-260. The court further found that the fact that many permits were denied based on the 650-foot separation requirement does not support a disparate impact claim. 1-ER-260.

On appeal, Ohio House does not deny these failings, and instead makes only the perfunctory argument that "[n]o statistical analysis was

64

necessary" because the 650-foot separation requirement "served to disqualify 22 of 26 group home CUP applicants." AOB-48. However, Ohio House made no showing that the twenty-two disqualified applicants ceased operation or failed to find some other means of housing the disabled.

Ohio House continues its disparate impact argument by maintaining that "[b]ecause of the absence of boardinghouses in the City, no boardinghouses were or could have been affected by the new 650-foot or 1,000-foot separation requirements." AOB-48-49. Beyond the fact that there actually are boardinghouses in the City, 23-ER-5129-30, this distinction does not demonstrate disparate impact. It shows instead that, to the extent that anyone ever attempted to operate a multiple-rental home for the non-disabled in the City, the Zoning Code restraints would have the same impact on the non-disabled as they would on the disabled—indeed, a greater impact, because of the greater 1,000-foot separation required for large boardinghouses.

Ohio House's disparate impact argument on appeal fails at the first step. It never showed that the City's regulation of sober living homes had a disproportionately adverse effect on persons with a disability.

65

## VI. The District Court Correctly Denied Ohio House's Motion for a New Trial.

### A. The district court did not commit prejudicial errors on facial discrimination and justification.

Ohio House requests a new trial limited to the City's justifications for facial discrimination if the Court does not direct judgment in its favor on the claim. AOB-55. This argument fails at the outset because, as is explained above at pages 21-30, the Zoning Code is not facially discriminatory. But even if it were, Ohio House cannot establish a basis for a new trial.

Ohio House first claims that "the district court never clarified whether its summary judgment order had served to shift the focus of trial" to the City's justification and that "Ohio House had no choice but to present" testimony to make a facial showing. AOB-55-56. It does not identify any prejudice it suffered from presenting such testimony. And it cites no authority to support the notion that the court had to "clarif[y]" what it had ruled on summary judgment, particularly given that the court crafted the jury instructions to "track[] ... what the Court said in summary judgment rulings." 1-ER-85.

The court's summary judgment order clearly stated that the challenged Zoning Code provisions "support a finding of facial

discrimination" by showing different treatment, but that there were triable issues on the City's justifications. 1-ER-252, 257-58. The instructions the district court gave the jury were to the same effect:

> [Y]ou must *accept as true* that Ohio House has offered sufficient evidence to prove that each of the following provisions of the City's group home regulations are facially discriminatory:
>
> ... [listing provisions]
>
> *You will be asked to determine* whether the City has proven by a preponderance of the evidence that these provisions are justified.

3-ER-555-56 (emphasis added).

Ohio House also argues the jury may somehow have interpreted the instruction that Ohio House had "offered sufficient evidence" to mean that the jury had the option decide that Ohio House had not shown facial discrimination. AOB-56. But it did not make this objection at the time; it simply "object[ed] to the modification of the instruction." 1-ER-85. Such a general objection was insufficient to preserve the argument it now makes on appeal. *See C.B. v. City of Sonora*, 769 F.3d 1005, 1019 n.11

(9th Cir. 2014) (en banc) (to be preserved, objections "must be sufficiently specific to bring into focus the precise nature of the alleged error").[15]

Because Ohio House failed to preserve the objection, its challenge is reviewed for plain error. Fed. R. Civ. P. 51(d)(2); *Skidmore*, 952 F.3d at 1065. Ohio House does not attempt to meet the "demanding requirements" for plain error—that any error was obvious, it affected substantial rights, and it resulted in a miscarriage of justice. *Skidmore*, 952 F.3d at 1073.

Even if Ohio House somehow preserved its objection, the district court's wording of the instructions was well within its discretion. Unlike in Ohio House's authority *Dillard & Sons Construction, Inc. v. Burnup & Sims Comtec, Inc.*, 51 F.3d 910 (10th Cir. 1995), AOB-56-57, the jury was instructed (1) to "accept as true" that Ohio House had offered sufficient evidence to show facial discrimination; and (2) "to determine" whether the City proved its justification. 3-ER-555-56. An instruction that the jury "must determine" an issue "inform[s] the jurors that it [i]s their responsibility" to reach the issue. *Ridgeway v. Walmart Inc*, 946 F.3d

---

[15] Ohio House did raise a specific objection, but to a different instruction. 1-ER-85-86.

1066, 1082 (9th Cir. 2020) (emphasis omitted). More broadly, the jury was instructed over and over again on how it must address the City's "facial discrimination" and its "facially discriminatory" regulations. 3-ER-557-563.

Ohio House's next challenge is that the instructions purportedly allowed the City to justify facial discrimination by relying on general zoning interests. AOB-57 (citing 1-ER-111). But the zoning-powers instruction Ohio House cites related only to a *different* claim, its disparate treatment claim, which the court instructed the jury to "consider independently of this claim of facial discrimination." 3-ER-564.

Ohio House also asserts that the district court should have instructed the jury that general zoning interests could *not* justify facial discrimination. AOB-57. But the court did in fact instruct that "[t]he City may not use proof of a legitimate, nondiscriminatory government interest to justify facial discrimination." 3-ER-580. "[T]he law presumes that jurors carefully follow the instructions given to them ...." *Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1023 (9th Cir. 2000) (citation omitted).

Finally, Ohio House complains that the City's closing argument relied on general zoning interests. AOB-57-58. Even if this were improper, it did not object below and cannot meet the exacting plain-error standard—particularly given that the instructions accurately explained what the jury could consider, that the law presumes that the jurors followed those instructions, and that the City never stated that zoning interests could justify facial discrimination. *See Swinton v. Potomac Corp.*, 270 F.3d 794, 816 (9th Cir. 2001) (reviewing for plain error a closing-argument objection that was not raised at trial).

## B. The jury instructions on the interference claim were legally correct.

Ohio House argues that the instructions on the interference claim were erroneous because they referred to interference "with disabled persons['] housing opportunities" rather than interference with Ohio House's rights. AOB-58 (emphasis omitted). But the language it complains of was only in the introductory statements to the jury describing Ohio House's claims. 3-ER-549. As Ohio House concedes, the

court's instructions on the "elements of interference" were "correct."[16] AOB-58. Specifically, the district court instructed the jury that it could find interference by showing (1) that "Ohio House" was engaged in protected activity; (2) that "Ohio House" was subjected to an adverse action; and (3) that the adverse action was taken against "Ohio House" because it was engaged in protected activity. 3-ER-571. The district court even instructed the jury to accept that Ohio House provides housing for disabled people and that this is protected activity. *Id.*

Ohio House also argues that the special verdict form was incorrect because it referred to interference with disabled people's rights. AOB-58; 1-ER-56. But it cannot show error because the verdict form must be read together with the interference instructions, *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1475-76 (9th Cir. 1995), which Ohio House concedes were "correct." AOB-58.

As to its complaint that the City's closing argument mentioned interference with disabled people's rights, AOB-59, Ohio House did not object below and cannot meet the exacting plain-error standard that

---

[16] The district court's instructions were nearly identical to Ohio House's proposed instructions. *Compare* 3-ER-571, *with* SER-51-52.

applies, *Swinton*, 270 F.3d at 816—particularly given that the jury was properly instructed on the elements of the interference claim and the law presumes that the jurors followed those instructions.

**C.    The district court did not abuse its discretion when it excluded statements by governmental entities about group home regulations.**

Ohio House challenges the district court's decision to exclude statements by state and federal agencies about group home regulations, but it cites no authority that such evidence is admissible.  AOB-59-60. The court is "the jury's sole source of the law" and thus "may exclude evidence of what the law is or should be."  *United States v. Powell*, 955 F.2d 1206, 1214 (9th Cir. 1991) (emphasis omitted).  Also, given that the agencies' statements were about *another* city's regulations and about group home regulations generally, the district court did not abuse its discretion by concluding that they were irrelevant.  1-ER-182.

Ohio House complains that the district court refused to give its "preemption" instruction, AOB-60, but it has waived the challenge on appeal by raising it in only one paragraph without any citation to authority.  *See Badgley v. United States*, 957 F.3d 969, 978-79 (9th Cir. 2020).  In any event, the instructions were clear that the City was liable

if Ohio House proved a violation of federal or state law, so no "preemption" instruction was necessary. 3-ER-549-80.

## D. Ohio House has waived any challenge to the instructions on its reasonable accommodation claim.

Ohio House claims that the district court erred by refusing to give its proposed instructions on the reasonable accommodation claim. AOB-60-61. Again, it has waived the argument by raising it in only one sentence without any analysis or citation to authority. *See Badgley*, 957 F.3d at 978-79.

Also, any error would be harmless. Ohio House faults the district court for not instructing the jury that the City's reasonable accommodation policies violated the law, AOB-60, but this challenge must fail because, as is demonstrated above at pages 43-59, they do not.

## E. The district court did not abuse its discretion by admitting Brandon Stump's testimony containing epithets.

During his deposition, Ohio House founder Brandon Stump was asked why he thought a City councilperson's comments that "Ohio House was ruining the character of the neighborhood" was discriminatory. 3-

ER-617.  His only response was that the City did not "welcome" people of color and Jewish people, and he used racial and ethnic epithets in responding.  3-ER-617.  Ohio House argues that the district court should have excluded this testimony because he used epithets, but the court's ruling was well within its discretion under Federal Rule of Evidence 403.

Ohio House's argument that "[s]uch language may provoke strong emotions in jurors," AOB-62, ignores the content of Stump's testimony. The testimony could not have prejudiced Ohio House, because Stump was not testifying to his own views, he was describing what he perceived to be the views of a City official, which he found abhorrent.  And this is exactly how the jury interpreted it—the note it sent to the court stated: "Brandon Stump testified he feels the denial or city's request to prevent institutionalized neighborhood and preserve character is because city has racially motivated discrimination."  3-ER-530.  If anything, Stump's intemperate testimony would have fostered prejudice against the City, not Ohio House.

Also, given that the lawsuit alleged discrimination, the jury had a right to know what conduct Ohio House claimed was discriminatory and to hear that Stump had no facts to support his claim.  *See United States*

74

*v. Pena*, 24 F.4th 46, 64, 66 (1st Cir. 2022) (holding that the district court did not abuse its discretion by admitting testimony with racial and misogynistic epithets made in the context of statements relevant to the case).

Any confusion on the jury's part was adequately addressed by the district court's response that no claim had been made on the basis of racial discrimination or Stump's personal views. 3-ER-529. Ohio House even agreed that the court's response was "fine." 24-ER-5331.

## VII. New Issues Introduced by the State Do Not Justify Reversal.

To a large extent, the State advances arguments that Ohio House never presented to the district court and does not present on appeal, some of which are addressed above. An issue raised only in an amicus brief is not properly before the Court. *United States v. Wahchumwah*, 710 F.3d 862, 868 n.2 (9th Cir. 2013); *Russian River Watershed*, 142 F.3d at 1141 n.1. The Court should not consider the State's new issues but, if it does, the City responds below.

## A.    California's right of privacy does not justify reversal.

The State tries to suggest that the City's regulations somehow run afoul of the state Constitution's right of privacy, as articulated in *City of Santa Barbara v. Adamson*, 610 P.2d 436 (Cal. 1980).  PAB-17.  That decision overturned a municipal ordinance that required all occupants of a house to be members of a single family.  *Id.* at 437-38, 444.

The right of privacy *Adamson* establishes is not developed in the record because it was not invoked in Ohio House's motions or at trial. That decision disallowed a zoning restriction that barred unrelated individuals from forming a housekeeping unit but approved restrictions on living arrangements such as group and sober living homes. Specifically, the California Supreme Court held: "'[R]esidential character' can be and is preserved by restrictions on transient and institutional uses (hotels, motels, boarding houses, clubs, etc.)."  *Id.* at 441.  Here, the City enacted its group home regulations to, among other goals, "preserve the residential character of single-family residential neighborhoods." StatAdd-143.  And Ohio House is, if nothing else, an institution catering to transients—it is a for-profit structured men's sober living dwelling in

76

which the average stay is seven-and-a-half to nine months.  17-ER-3814, 3891; 20-ER-4510.

### B.    California's Housing Element Law does not justify reversal.

The State's brief dwells on the California Housing Element Law, particularly its requirement that cities should prepare a "housing element" that analyzes fair housing issues related to housing for people with disabilities.  PAB-10-12.  The State neglects to mention that the City's Housing Element for its General Plan, which does just that, was an exhibit at trial.  *See, e.g.*, SER-53-66.  In any event, the Housing Element Law was never central to any claim Ohio House made in the district court.

### C.    Any differences between California and federal law do not justify reversal.

The State's brief expounds at length on the undisputed fact that California law (like federal law) prohibits housing discrimination against people with disabilities.  PAB-4-13.  It suggests that the FEHA and its underlying regulations are somehow broader than the FHA.  PAB-6-7.  It acknowledges that this Court held in *Pacific Shores Properties, LLC v.*

77

*City of Newport Beach*, 730 F.3d 1142, 1156 n.14 (9th Cir. 2013), that this Court "appl[ies] the same standards to FHA and FEHA claims," but adds the qualification, found nowhere in that decision, that this occurs only "in some instances." PAB-6. In fact, the jury instructions included an FEHA-specific instruction on the one additional issue under California law that arose at trial. 3-ER-559.

### D. "Public policy" does not justify reversal.

Finally, the State contends that the jury's verdict should be ignored and the resulting judgment overturned because the Zoning Code supposedly contravenes public policy and negatively impacts disabled Californians. PAB-25-29. Here again, it fails to identify a legitimate basis for reversal.

No one disputes that discrimination against the disabled is against public policy. It does not follow, though, that businesses like Ohio House offering services to the disabled must be freed from all restriction or regulation. The question is whether the City has acted in accordance with the laws against discrimination.

The City's group and sober living home regulations were enacted to "further the purposes of the FEHA [and] the [FHA]," but also "to preserve

the residential character of single-family residential neighborhoods." StatAdd-143. To this end, the City enacted the regulations in pursuit of several subordinate public policies:

> (1) ensuring that group homes are actually entitled to the special accommodation and/or additional accommodation provided under the Costa Mesa Municipal Code ...;

> (2) limiting the secondary impacts of group homes by reducing noise and traffic, preserving safety and providing adequate on street parking;

> (3) providing an accommodation for the handicapped that is reasonable and actually bears some resemblance to the opportunities afforded non-handicapped individuals to use and enjoy a dwelling unit in a single-family neighborhood; and

> (4) to provide comfortable living environments that will enhance the opportunity for the handicapped and for recovering addicts to be successful in their programs.

StatAdd-143.

Under California law, municipalities are granted wide judicial deference in determining zoning policy, and "[i]f the need for a particular regulation is a matter upon which reasonable minds can differ judicial intervention is precluded." *Groch v. City of Berkeley*, 173 Cal. Rptr. 534, 536 (Ct. App. 1981) (citing *Clemons v. City of Los Angeles,* 222 P.2d 439, 441 (Cal. 1950)). Zoning presents questions generally within the discretion of zoning authorities, and "[t]heir determination may not be

set at naught by the courts unless it is arbitrary and unreasonable." *Beverly Oil Co. v. City of Los Angeles*, 254 P.2d 865, 869 (Cal. 1953).

This is not to say that a zoning ordinance may contravene state or federal law, which is what this litigation is actually about. But the State cannot demand that a judgment holding that the City fully complied with the law be set aside merely because doing so could further one public policy at the expense of all others.

## VIII. The Court Should Affirm but, if It Reverses, There Is No Ground for Reassignment to a New Judge.

"Reassignment ... is reserved for 'rare and extraordinary circumstances.'" *Krechman v. Cnty. of Riverside*, 723 F.3d 1104, 1112 (9th Cir. 2013) (citation omitted). Ohio House falls far short of this standard. It does not point to any improper comments by Judge Selna or to anything in the record suggesting that he was unfair.

Ohio House claims that Judge Selna committed error. AOB-63. He did not, but even if he did, error alone is insufficient to warrant reassignment; otherwise, every reversal would justify a new judge. *Manley v. Rowley*, 847 F.3d 705, 712 (9th Cir. 2017). This case is nothing like *Disability Rights Montana, Inc. v. Batista*, 930 F.3d 1090 (9th Cir.

2019), AOB-63, where the Court reassigned the case because the district court refused to revisit an "obviously incorrect decision" without providing any justification. *Id*. at 1100-01.

Ohio House identifies a different specific judge, now presiding over a related case, that it would prefer to have assigned. AOB-63. It is, in other words, engaging in judge shopping, which "clearly constitutes conduct which abuses the judicial process." *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998) (internal quotation marks omitted).

The Court should affirm but, if it reverses, reassignment is not warranted.

## CONCLUSION

Neither Ohio House nor the State presents a cognizable ground for reversal. From beginning to end, the evidence showed that the City, in enacting legislation to cope with mounting problems due to an increasing number of sober living homes, carefully crafted its ordinances to protect the rights and interests of the disabled and the non-disabled. This Court should affirm.

Respectfully Submitted,

Date:  October 6, 2023          By:   s/ *Mary-Christine Sungaila*
                                      Mary-Christine Sungaila
                                      Charles M. Kagay
                                      Jocelyn Sperling
                                      Greg Wolff
                               Complex Appellate Litigation Group LLP

                                      Seymour B. Everett
                                      Christopher D. Lee
                                      Samantha E. Dorey
                               Everett Dorey LLP

                                      Kimberly Hall Barlow
                               Jones Mayer

                               *Attorneys for Defendant-Appellee*
                               *City of Costa Mesa*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 22-56181

I am the attorney or self-represented party.

**This brief contains** 15,263 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◉ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

    ☐ it is a joint brief submitted by separately represented parties.

    ☒ a party or parties are filing a single brief in response to multiple briefs.

    ☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated _____.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Mary-Christine Sungaila **Date** 10/6/2023

*(use "s/[typed name]" to sign electronically-filed documents)*

Feedback or questions about this form? Email us at forms@ca9.uscourts.gov

**Form 8** *Rev. 12/01/22*