No. 22-56181

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

———————————

**THE OHIO HOUSE, LLC,**
*Plaintiff-Appellant,*

*v.*

**CITY OF COSTA MESA,**
**A MUNICIPAL CORPORATION,**
*Defendant-Appellee,*

*and*

**BRANDON STUMP, AN INDIVIDUAL; ET AL.,**
*Counter-defendants.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
THE HONORABLE JAMES V. SELNA, JUDGE
CASE NO. 8:19-CV-01710-JVS-GJS

———————————

## APPELLEE CITY OF COSTA MESA'S
## RESPONSE TO PETITION FOR REHEARING EN BANC

———————————

MARY-CHRISTINE SUNGAILA
CHARLES M. KAGAY
JOCELYN SPERLING
COMPLEX APPELLATE
LITIGATION GROUP LLP
620 NEWPORT CENTER DRIVE
SUITE 1100
NEWPORT BEACH, CA 92660
(949) 991-1900
MC.SUNGAILA@CALG.COM

KIMBERLY HALL BARLOW
JONES MAYER
3777 N. HARBOR BOULEVARD
FULLERTON, CA 92835
(714) 446-1400
KHB@JONES-MAYER.COM

*Additional Counsel Listed on Following Page*

SEYMOUR B. EVERETT
CHRISTOPHER D. LEE
SAMANTHA E. DOREY
EVERETT DOREY LLP
18300 VON KARMAN AVENUE
SUITE 900
IRVINE, CA 92612
(949) 771-9233
SEVERETT@EVERETTDOREY.COM

*Attorneys for Defendant-Appellee*
***City of Costa Mesa***

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................ii

INTRODUCTION ...............................................................................1

ARGUMENT ...................................................................................2

    I.    The Opinion does not misread the Code or disregard Supreme Court disparate treatment precedent. ...................2

        A.    The Opinion properly assesses the burdens and benefits of the Code. .......................................2

        B.    The Opinion properly analyzes Ohio House's facial discrimination claim. ....................................6

        C.    The Opinion thoroughly addresses the state law claims...............................................8

    II.    The Opinion's reasonable accommodation analysis does not contradict other decisions. ...............................9

    III.    The Opinion correctly upholds the City's policy of protecting community-based housing by limiting the institutionalization of residential neighborhoods. ...............15

    IV.    The majority properly analyzed the interference claim.......18

CONCLUSION .................................................................................23

# TABLE OF AUTHORITIES

CASES

*Bloch v. Frischholz*,
    587 F.3d 771 (7th Cir. 2009) ......................................................... 19

*Brown v. City of Tucson*,
    336 F.3d 1181 (9th Cir. 2003) ...................................................... 20

*Budnick v. Town of Carefree*,
    518 F.3d 1109 (9th Cir. 2008) ........................................................ 6

*Cmty. House, Inc. v. City of Boise*,
    490 F.3d 1041 (9th Cir. 2007) ........................................................ 7

*Costa v. Desert Palace, Inc.*,
    299 F.3d 838 (9th Cir. 2002) ....................................................... 22

*Courage to Change Ranches Holding Co. v. El Paso County*,
    73 F.4th 1175 (10th Cir. 2023) ....................................................... 4

*Crowder v. Kitagawa*,
    81 F.3d 1480 (9th Cir. 1996) ....................................................... 13

*Edwards v. Marin Park, Inc.*,
    356 F.3d 1058 (9th Cir. 2004) ...................................................... 20

*Gamble v. City of Escondido*,
    104 F.3d 300 (9th Cir. 1997) ......................................................... 6

*Giebeler v. M & B Assocs.*,
    343 F.3d 1143 (9th Cir. 2003) ...................................................... 11

*Hatfield v. Cottages on 78th Cmty. Ass'n*,
    2022 WL 2452379 (10th Cir. July 6, 2022) ................................... 19

*Larkin v. Mich. Dep't of Soc. Servs.*,
    89 F.3d 285 (6th Cir. 1996) ........................................................... 4

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973) .............................................................. 21, 22

*McGregor v. Nat'l R.R. Passenger Corp.*,
   187 F.3d 1113 (9th Cir. 1999) ....................................................... 15

*Mich. Prot. & Advoc. Serv., Inc. v. Babin*,
   18 F.3d 337 (6th Cir. 1994) .......................................................... 19

*Morris v. W. Hayden Ests. First Addition Homeowners Ass'n*,
   104 F.4th 1128 (9th Cir. 2024) ............................................ 3, 18, 19

*Oxford House-C v. City of St. Louis*,
   77 F.3d 249 (8th Cir. 1996) ............................................................ 4

*Pac. Shores Props., LLC v. City of Newport Beach*,
   730 F.3d 1142 (9th Cir. 2013) ...................................................... 22

*PGA Tour, Inc. v. Martin*,
   532 U.S. 661 (2001) ...................................................................... 15

*Redd v. Guerrero*,
   122 F.4th 1203 (9th Cir. 2024) ...................................................... 9

*Sailboat Bend Sober Living, LLC v. City of Fort Lauderdale*,
   46 F.4th 1268 (11th Cir. 2022) ....................................................... 4

*Salisbury v. City of Santa Monica*,
   998 F.3d 852 (9th Cir. 2021) ......................................................... 9

*Sanghvi v. City of Claremont*,
   328 F.3d 532 (9th Cir. 2003) ........................................................ 22

*Schwarz v. City of Treasure Island*,
   544 F.3d 1201 (11th Cir. 2008) ......................................... 11, 12, 14

*Sofarelli v. Pinellas County*,
   931 F.2d 718 (11th Cir. 1991) ....................................................... 19

*United States v. Cal. Mobile Home Park Mgmt. Co.*,
   29 F.3d 1413 (9th Cir. 1994) ........................................................ 13

*United States v. Cal. Mobile Home Park Mgmt. Co.*,
   107 F.3d 1374 (9th Cir. 1997) ...................................................... 13

*United States v. City of Hayward*,
   36 F.3d 832 (9th Cir. 1994) .................................................... 20, 21

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*,
  429 U.S. 252 (1977) ........................................................................21

*Walker v. City of Lakewood*,
  272 F.3d 1114 (9th Cir. 2001) ........................................... 18, 19, 20

**STATUTES**

42 U.S.C. § 3617 ....................................................................... 18, 20, 21

Costa Mesa Mun. Code § 13-200.62 ........................................ 9, 10, 11, 12

**RULES**

Fed. R. App. P. 40 ......................................................................................1

# INTRODUCTION

Sober living home operator Ohio House sued the City of Costa Mesa for discrimination in enforcing its Zoning Code. Because its business serves recovering alcoholics and substance users, Ohio House alleged the enforcement violated the federal Fair Housing Act ("FHA") and the California Fair Employment and Housing Act ("FEHA"). After trial, a jury found Ohio House had not proved the City engaged in discrimination. Op. 15. The panel reviewed Ohio House's multiple attacks on the judgment and affirmed it in a carefully reasoned opinion.

Ohio House petitions for rehearing en banc, and its petition is supported by two groups of amici—a coalition of public interest organizations ("PIO," ECF 74-2 (PIO-Br.)), and a coalition of housing advocates ("HA," ECF 72-2 (HA-Br.)).

None of the briefs presents a valid ground for rehearing en banc under Federal Rule of Appellate Procedure 40(b)(2). They assert that the Opinion conflicts with other decisions, but these assertions are incorrect. The only claimed issue of "exceptional importance" is that the Opinion did not mention an amicus brief filed in Ohio House's support. Largely, the briefs assert (incorrectly) that the panel misread the

1

factual record and the Code.  Even if it had, this would not be a

justification for en banc review.

## ARGUMENT

**I.** **The Opinion does not misread the Code or disregard Supreme Court disparate treatment precedent. (responding to Pet. 6-15)**

The petition focuses on the details of the Code and fails to point to

any legal conflict with the decisions of this or other courts.

### A.  The Opinion properly assesses the burdens and benefits of the Code.

Ohio House and PIO argue the Opinion erred in holding that the

Code benefits the disabled.  Pet. 7; PIO-Br. 18.  To do so, they ignore

that the Code allows group home operators to opt out of the challenged

restrictions.  The Code regulates two categories of group-living

facilities—group homes (including sober living homes), available only to

the disabled, and boardinghouses, available to anyone.  Op. 10-11.  The

Opinion observes, correctly, that the Code largely places more exacting

restrictions on boardinghouses than on group homes.  Op. 23-24.  But

the ultimate determinative factor is that group homes can choose to be regulated exactly like group-living facilities serving the non-disabled:

> [T]he group and sober-living home regulations operate as a one-way ratchet to broaden the regulatory options for group housing serving the disabled. In situations where the boardinghouse regulations are more favorable, group homes can opt into that scheme. Where group and sober-living home regulations are more favorable, they can make that choice. This choice benefits group and sober-living homes over boardinghouses.

Op. 26 (footnote omitted).

To attack the Opinion factually, Ohio House argues: "The panel, without citation, mistakenly suggests that boardinghouses *did* exist." Pet. 11. It neglects to mention the substantial trial evidence that boardinghouses *do* exist, 23-ER-5129-30, evidence that must be viewed in the light most favorable to the City. *Morris v. W. Hayden Ests. First Addition Homeowners Ass'n*, 104 F.4th 1128, 1145 (9th Cir. 2024), *cert. denied*, 2025 WL 247458 (U.S. Jan. 21, 2025). And a supposed misreading of the factual record is scarcely a ground for rehearing en banc.

This "one-way ratchet" wholly distinguishes this case from the decisions Ohio House cites for the proposition that "the FHA prohibits regulations like the City's that impose neighborhood caps or quotas on

3

housing opportunities for disabled persons." Pet. 7. In *Courage to Change Ranches Holding Co. v. El Paso County*, 73 F.4th 1175 (10th Cir. 2023), and *Larkin v. Michigan Department of Social Services*, 89 F.3d 285 (6th Cir. 1996), the courts found there was discrimination because the group-living facilities for the disabled did not have the option of operating under less restrictive regulations governing comparable facilities serving the non-disabled.

The Opinion here, in contrast, is consistent with circuits that have held there is no discrimination where the disabled are offered, but not required to accept, an alternative not available to the non-disabled that includes both preferential treatment and additional restrictions. *Sailboat Bend Sober Living, LLC v. City of Fort Lauderdale*, 46 F.4th 1268, 1277-79 (11th Cir. 2022); *Oxford House-C v. City of St. Louis*, 77 F.3d 249, 251-52 (8th Cir. 1996).

Still, Ohio House accuses the panel of "ignor[ing] the text of the ordinance," Pet. 8-10—text that the panel scrupulously cited, quoted, and analyzed. Op. 8-12, 21, 23-24, 25 n.5, 45-51, 53. It makes this accusation to preface an opaque argument that the panel detailed benefits in the Code but failed to detail some of the Code's burdens.

4

Pet. 8-9.  In fact, the Opinion describes burdens of the Code in great detail, Op. 9-12, but Ohio House maintains that some are not mentioned.  The thrust of this argument is thus the minutiae of the Code, not a legal conflict with the decisions of this or other courts.

Ohio House further accuses the panel of "ignor[ing] controlling Supreme Court precedent when it concluded that those potential benefits to disabled persons as a *class* excused any injury suffered by Ohio House," because the law "guarantee[s] rights to individuals, not to *classes*."  Pet. 2, 10 (emphasis added).  Ohio House does not and cannot point to any holding in the Opinion that excuses an injury to Ohio House, because there is none.

The Opinion *does* analyze the benefits of the Code to the class of disabled persons.  Op. 17-27, 28-31; Op. 63-64 (Ikuta, J., specially concurring).  It does so because Ohio House argued that class benefits were a dispositive issue.  As to disparate treatment, its opening brief, and this petition, argued the City was required to show "that the restriction benefits the protected *class*."  AOB 26-27; Pet. 7 (citation omitted).  As to disparate impact, the opening brief argued that "Ohio House had to show a neutral policy with a significant adverse effect on

a protected *class*." AOB 48 (emphasis added). The Opinion addressed precisely the issues Ohio House specified.

Ohio House also accuses the panel of "ignor[ing] the Supreme Court's teaching that a defendant may not justify discrimination by pointing to another group it also discriminates against." Pet. 11. The City never pointed to any group that it discriminated against, and the panel never suggested that discrimination could be justified in this way. The Code places reasonable restrictions on *all* group-living arrangements—restrictions that are relaxed but not entirely waived for group homes serving the disabled. This is a legitimate zoning function, not proof of comparative discrimination. *Gamble v. City of Escondido*, 104 F.3d 300, 306-07 (9th Cir. 1997); *Budnick v. Town of Carefree*, 518 F.3d 1109, 1116-17 (9th Cir. 2008).

### B. The Opinion properly analyzes Ohio House's facial discrimination claim.

The petition criticizes the panel for supposedly "misclassif[ying]" and "[m]islabeling" Ohio House's claims as a "facial challenge." Pet. 12-13. This is puzzling, because Ohio House repeatedly informed the

6

district court and the panel that it was bringing a "facial challenge."
2-ER-430, 431 n.6; AOB 42, 65; RB 19-20.

The petition, though, claims that "when a plaintiff like Ohio
House alleges facial discrimination based on the terms of a policy or
regulation, the plaintiff states a claim of disparate treatment, *not* a
facial challenge." Pet. 12. To support this point, Ohio House cites
*Community House, Inc. v. City of Boise*, 490 F.3d 1041, 1049 (9th Cir.
2007). Ohio House ignores that the Opinion accepts its interpretation of
*Community House*. Op. 17 ("Ohio House further contends that to
prevail on its disparate-treatment claim based on a facial-
discrimination theory, it need only prove facially different treatment
. . . ."); Op. 21 ("Under *Community House*'s stated burden-shifting
framework, Ohio House is correct."); *cf.* Op. 62-65 (Ikuta, J., specially
concurring) (disagreeing with Ohio House's interpretation of
*Community House* and holding it had not established a prima facie case
of discrimination).

Ohio House's disparate treatment argument on appeal was that
the Code is invalid on its face, an argument the Opinion dissects in
great detail. AOB 26-40; Op. 17-27. In its petition, Ohio House now

claims that the resulting Opinion is inadequate because Ohio House "seeks redress for its own injuries"—a distinction it did not draw in its briefing. Pet. 13. Ohio House had an opportunity at trial to "seek[ ] redress for its own injuries," but the jury found against it.

### C. The Opinion thoroughly addresses the state law claims.

The most tenuous ground for rehearing Ohio House presses is that the Opinion does not mention an amicus brief from two California agencies that prosecute FEHA claims. Pet. 13-15. This is the only issue of "exceptional importance" Ohio House finds in the Opinion. Pet. 5, 15.

Ohio House's premise is that, if a decision does not mention an amicus brief, the panel "ignored" it, and if a state agency filed the brief, the omission raises "federalism and comity concerns." Pet. 13-15.

The Opinion carefully and thoroughly analyzes Ohio House's California law claims. Op. 7, 10, 14, 15-17, 21 n.3, 26-27, 33, 46, 59-61; Op. 62, 64 n.1 (Ikuta, J., specially concurring). Ohio House does not identify any place where the Opinion conflicts with California law.

The failure to cite an amicus brief bears no resemblance to the concerns raised in Ohio House's lone citation, *Redd v. Guerrero*, 122 F.4th 1203, 1212 (9th Cir. 2024) (Bennett, J., dissenting from the denial of rehearing en banc). There, the panel did not "ignore" an amicus brief; rather, it had imposed on state officials a federal constitutional requirement burdensome to the federal judiciary. Even in that circumstance, rehearing en banc was denied.

## II. The Opinion's reasonable accommodation analysis does not contradict other decisions. (responding to Pet. 15-20 and PIO-Br. 1-13)

An accommodation is required under the FHA only if it is necessary and reasonable—that is, it does not require a fundamental alteration. *Salisbury v. City of Santa Monica*, 998 F.3d 852, 857, 861 (9th Cir. 2021). The jury was so instructed, and it found that the City had not failed to make a reasonable accommodation. 3-ER-572, 576; 1-ER-55.

Nevertheless, Ohio House attacks the Opinion for failing to strike down one of the eight criteria the Code lists for evaluating a reasonable accommodation request—Costa Mesa Municipal Code § 13-200.62(f)(7),

9

which asks "[w]hether the existing supply of facilities of a similar nature and operation in the community is sufficient to provide individuals with a disability an equal opportunity to live in a residential setting." Pet. 16-18; Op. 49 & n.15. Ohio House rewrites this to mean "the City mandated that Ohio House and every other group home reasonable accommodation applicant establish an absence of similar housing in the City"—which it dubs the "[u]nlawful 'necessity' standard." Pet. 16.

However, as the Opinion points out, the Code does not so mandate. The Code requires the Planning Division to make eight findings in deciding a reasonable accommodation request. Op. 48 n.15. The required finding under subsection (f)(7) differs from most of the others (which Ohio House has not challenged, Op. 49) because it is not outcome-determinative—the Code does not require denial of the reasonable accommodation request simply because the finding under subsection (f)(7) is positive. Op. 50-51.

And even if it were outcome-determinative, subsection (f)(7) would not, as Ohio House says, compromise the right of "disabled persons . . . 'to live in the residence of their choice in the community.'" Pet. 16

(quoting *Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1149 (9th Cir. 2003)).
The disabled do have the right to live in the residence of their choice, as
the Opinion acknowledges. Op. 50-51. But there is nothing in the
Opinion (or the record) suggesting that the disabled have chosen to live
in group homes crowded together less than 650 feet from one another.
The finding required by subsection (f)(7) addresses whether they will
have the right to live in a similar facility in a residential setting, but
not in a cluster of such facilities.

The right to live in a residence of one's choice does not mean that
the disabled may live anywhere they choose without regard to zoning
regulations that apply to everyone. A provider could not, for example,
erect a 20-story building in a neighborhood zoned for two-story
buildings simply because disabled persons would like to live in a taller
building. Or, in the case of Costa Mesa, it does not mean that the City
must automatically allow group-living residences for the disabled to
congregate closer than within 650 feet of each other, while group-living
residences for the non-disabled must maintain a greater separation.
For example, in Ohio House's authority *Schwarz v. City of Treasure
Island*, 544 F.3d 1201 (11th Cir. 2008), where the operator of halfway

houses challenged a city ordinance limiting occupancy turnover, the Eleventh Circuit held that allowing halfway houses to operate within zones that permitted unlimited turnover in multifamily dwellings would be a reasonable accommodation, but would *not* be a reasonable accommodation in zones that allowed only single-family dwellings. *Id.* at 1222-25.

Ohio House also dismisses the Opinion's observation that subsection (f)(7) could be severed from the other findings required for a reasonable accommodation request to be granted. Pet. 17-18. It fails to note that it did not satisfy three other findings required for its reasonable accommodation claim, rendering the finding under subsection (f)(7) irrelevant. 14-ER-3109-11. As the Opinion notes, Ohio House did not challenge any other findings under the Code, Op. 49, meaning that the result in this case would be unaltered if subsection (f)(7) were declared invalid and severed.

On a related note, PIO argues that the Opinion sweeps too broadly when it states: "Taken as a whole, the City's reasonable-accommodation regulation is not inconsistent with the FHA." PIO-Br. 12 (quoting Op. 49). But Ohio House did not challenge any other aspect of the

reasonable-accommodation regulation. In any event, even if PIO's contention had any merit, it would not be a ground for en banc rehearing; it would at most require deletion of this sentence in the Opinion, which would not alter the outcome.

PIO also argues at length that a determination of fundamental alteration requires a fact-specific case-by-case inquiry. PIO-Br. 2-7. It fails to recognize that a jury examined Ohio House's individual case at trial. The jury found that Ohio House had failed to prove the City had unlawfully refused to make a reasonable accommodation. 1-ER-55; 3-ER-576. In contrast, PIO's authorities—*Crowder v. Kitagawa*, 81 F.3d 1480 (9th Cir. 1996) and *United States v. California Mobile Home Park Management Co.*, 107 F.3d 1374 (9th Cir. 1997)[1]—concerned pretrial dismissals.

Specifically, PIO criticizes the panel's pronouncement that "'Ohio House ultimately disputes as unlawful the City's denial of permits for over 20 existing group homes located in residential zones,'" because, it says, Ohio House "requested an accommodation for itself only." PIO-

---

[1] The language PIO quotes comes from an earlier decision in the same case at 29 F.3d 1413, 1418 (9th Cir. 1994).

Br. 9 (quoting Op. 58) (emphasis omitted). Actually, Ohio House argued on appeal that the group home regulations "caused a discriminatory effect" because "[t]he City's separation requirement served to disqualify 22 of 26 group home CUP applicants." AOB 48.

Ohio House and PIO make the factual argument that the City has a "blanket policy" of denying every reasonable accommodation request seeking a reduction in the 650-foot separation requirement. Pet. 18-20; PIO-Br. 4. The City does not routinely waive the separation requirement, precisely because it considers the requirement to be essential, and whether this is correct is a factual question that the jury decided against Ohio House. *See Schwarz*, 544 F.3d at 1221.

The evidence at trial showed that the City *would* grant a reasonable accommodation request in the appropriate circumstances, which were not present here. 22-ER-4977. The City disallowed relaxation of the requirement at the *staff* level but left the reasonable accommodation decision to the Planning Commission and ultimately the City Council. 20-ER-4426. Consideration of each application at multiple levels, even if such consideration historically resulted in denials, is the opposite of the "blanket policy" disallowed in Ohio House

14

and PIO's authorities, in which the defendants simply declared in advance that they would refuse to consider all reasonable accommodation requests, regardless of the merits. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 688-89 (2001); *McGregor v. Nat'l R.R. Passenger Corp.*, 187 F.3d 1113, 1116 (9th Cir. 1999).

The Opinion contains no suggestion that a "blanket denial" of all reasonable accommodation requests would pass muster under the FHA. It merely holds that, under "the facts of this case, the jury had an evidentiary basis on which to find that Ohio House's requested accommodation was unreasonable." Op. 57. Contrary to Ohio House's evidentiary argument, Pet. 19, the evidence did indeed show that relaxing the separation requirement for Ohio House would be a fundamental alteration of its zoning scheme. 22-ER-4974-75.

## III. The Opinion correctly upholds the City's policy of protecting community-based housing by limiting the institutionalization of residential neighborhoods. (responding to PIO-Br. 13-19)

PIO professes not to understand what the Opinion means by the term "institutionalization," and uses that misunderstanding to accuse

the panel of ignoring the needs of the disabled. PIO-Br. 13-19. They misread the Opinion.

PIO begins by creating its own definitions for "institutionalization" and shooting them down. PIO-Br. 13-15. The Opinion uses the term in the same way the City does in its ordinances—institutionalization means that a neighborhood becomes less like a residential area and more like an area dominated by institutional uses:

> [C]ongregating sober living homes in close proximity to each other does not provide the handicapped with an opportunity to "live in normal residential surroundings," but rather places them into living environments bearing more in common with the types of institutional/campus/dormitory living that the FEHA and [FHA] were designed to provide relief from for the handicapped, and which no reasonable person could contend provides a life in a normal residential surrounding.

Op. 9-10. The Code allows sober living homes to flourish throughout the City's residential neighborhoods but, to avoid institutionalization, does not allow them to "cluster[ ] . . . in close proximity to each other." Op. 41-42.

PIO argues the disabled have a greater need for shared housing than the non-disabled. PIO-Br. 17-19. That might well be so, but they cannot point to any instance in which the City denied a disabled person

the right to live in shared housing, or to anything in the Opinion countenancing such a denial.

Rather, the Code denies the operators of sober living homes the ability to operate facilities too close to one another. PIO does not and cannot argue that the disabled have a special need for their shared living facilities to cluster and overwhelm a neighborhood.

Indeed, PIO recognizes that "[t]o be effective, shared housing with no licensable services must be located in a residential neighborhood." PIO-Br. 16. That is the purpose of the City's separation requirement. As the Opinion observes, the record contains evidence that the City acted as it did to lessen the "'overconcentration of sober living units in any area'" and ensure that "'disabled persons recovering from addiction can reside in a comfortable residential environment versus in an institutional setting.'" Op. 57. In light of this evidence, the panel properly held that "[t]he jury could have reasonably concluded that the separation requirement from which Ohio House sought an exception is fundamental to achieving these goals." Op. 57-58.

**IV.    The majority properly analyzed the interference claim. (responding to Pet. 20-23 and HA-Br. 4-13)**

Ohio House argued on appeal that the City's discriminatory intent entitled it to judgment as a matter of law on the interference claim. AOB 51, 53 (arguing that "disability was a motivating factor in the City's conduct," which "required entry of JMOL on interference").  It now takes the opposite position, arguing the majority erred in "importing" discriminatory intent into the interference claim.  Pet. 22. The majority correctly concluded that Ohio House was required to prove discriminatory intent to prevail on its interference claim.  Op. 40.

The FHA makes it unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of . . . or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by [the FHA]." 42 U.S.C. § 3617.  This Court has recognized two types of § 3617 claims: retaliation and interference.  Op. 37; *Walker v. City of Lakewood*, 272 F.3d 1114, 1126 (9th Cir. 2001) (retaliation); *Morris*, 104 F.4th at 1142 (interference).

In retaliation cases, retaliatory intent is required, as the Opinion recognizes.  Op. 38-39; *Walker*, 272 F.3d at 1131.  Specifically, a

defendant is liable for retaliation if it took an action *because* plaintiff exercised a right—because A did this, B did that to A. Op. 38-39; *Walker*, 272 F.3d at 1131.

In interference cases, in contrast, a showing of discriminatory intent is required. In *Morris*, for example, this Court reviewed the record for adequate evidence of discriminatory intent to support the jury's finding of interference. 104 F.4th at 1143-45; Op. 39-40. Other circuits likewise require a showing of discriminatory intent to prove an interference claim. *Bloch v. Frischholz*, 587 F.3d 771, 783 (7th Cir. 2009) (en banc); *Hatfield v. Cottages on 78th Cmty. Ass'n*, 2022 WL 2452379, at *8 (10th Cir. July 6, 2022); *Mich. Prot. & Advoc. Serv., Inc. v. Babin*, 18 F.3d 337, 347 (6th Cir. 1994); *Sofarelli v. Pinellas County*, 931 F.2d 718, 722 (11th Cir. 1991).

Ohio House alleged only an interference claim, which required a showing of discriminatory intent. The jury reasonably concluded that the City denied it a permit because it was too close to other facilities, not because it had served the disabled. For example, the City presented evidence that it acted for non-discriminatory reasons, such as targeting

"high-density housing" rather than group homes for disabled people.
Op. 41-44.

The discriminatory intent requirement is crucial because, without
it, any regulatory action taken by a government would "interfere" with
a housing provider. If the City denied Ohio House permission to build a
group home in an industrial zone, it would have "interfered" with an
effort to serve the disabled. "[A]nti-interference provisions such as
those contained in the FHA . . . cannot be so broad as to prohibit 'any
action whatsoever that in any way hinders a member of a protected
class.'" *Brown v. City of Tucson*, 336 F.3d 1181, 1192 (9th Cir. 2003).
Because the jury found no discriminatory intent, the City did not
interfere "on account of" the fact that Ohio House serves the disabled.
42 U.S.C. § 3617.

Neither Ohio House nor HA cites any case holding that a plaintiff
can prevail on an interference claim without showing discriminatory
intent. They rely on *Walker*, 272 F.3d at 1131, and *Edwards v. Marin
Park, Inc.*, 356 F.3d 1058, 1063 (9th Cir. 2004), but those are retaliation
cases. They also rely on *United States v. City of Hayward*, 36 F.3d 832
(9th Cir. 1994). But that decision, although it uses the term

"interference," actually addresses a retaliation situation, involving retaliatory intent:

> This court has previously stated that § 3617 may involve a situation where no discriminatory housing practice may have occurred at all because the rights have actually been respected by persons who suffer consequent retaliation. This is such a case: In response to terminating a discriminatory practice, the City penalized Borello.

36 F.3d at 836 (citations, quotation marks, and ellipses omitted).

HA attempts to draw a distinction between two never-before-recognized categories of § 3617 claims: claims alleging interference "'*in the exercise or enjoyment of*'" fair housing rights ("Category 1") and "'*on account of* . . . having exercised or enjoyed, or . . . aided or encouraged any other person in the exercise or enjoyment of'" fair housing rights ("Category 2"). HA-Br. 5-9. HA says "Category 2" claims do not require a showing of discriminatory intent but point to no decision drawing such a distinction.

In partial dissent, Judge Gould concludes the majority conflates two tests to prove discrimination: *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977). Op. 68-69. These tests are generally used at the summary judgment stage to determine

whether there is a triable issue of fact. *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1158-59 (9th Cir. 2013).

At trial, these tests are irrelevant. *Sanghvi v. City of Claremont*, 328 F.3d 532, 540-41 (9th Cir. 2003). Instead, the fact-finder focuses "on the one essential question: whether the plaintiff is a victim of intentional discrimination." *Id.* at 541. A claim of intentional discrimination necessarily requires a showing of intent.

Again, Ohio House implicitly concedes that discriminatory intent was required in this case. *Supra* pp. 17-18. But, if necessary, the Opinion could be clarified to distinguish between summary judgment and trial, noting that at trial the jury considers discriminatory intent as part of the "ultimate question of discrimination *vel non*." *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 855-56 (9th Cir. 2002), *aff'd*, 539 U.S. 90 (2003).

On a related note, HA maintains that the majority misapplied *McDonnell Douglas* burden shifting. HA-Br. 11-12. Because this appeal arises from a jury verdict, this argument is likewise misplaced.

## CONCLUSION

For the foregoing reasons, the petition for en banc rehearing should

be denied.


Respectfully Submitted,


February 18, 2025            By:   s/ *Mary-Christine Sungaila*
                                         Mary-Christine Sungaila
                                         Charles M. Kagay
                                         Jocelyn Sperling
                                   Complex Appellate Litigation Group LLP

                                         Seymour B. Everett
                                         Christopher D. Lee
                                         Samantha E. Dorey
                                   Everett Dorey LLP

                                         Kimberly Hall Barlow
                                   Jones Mayer

                                   *Attorneys for Defendant-Appellee*
                                   *City of Costa Mesa*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form11instructions.pdf

**9th Cir. Case Number(s)**      No. 22-56181

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 40-1, the attached petition for panel rehearing/petition for rehearing en banc/response to petition is *(select one)*:

[X] Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words:**  4,200       .

*(Petitions and responses must not exceed 4,200 words)*

**OR**

[ ] In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature**   s/Mary-Christine Sungaila          **Date**   February 18, 2025
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 11**                                                                          *Rev. 12/01/24*